Constance JONES, and Terry
Lee Jones, Appellants

v.

Robert LEVIN, Administrator
D.B.N.C.T.A. of the Estate of Howard
Phillip Levin, also known as Howard
Levin, Appellee.

Superior Court of Pennsylvania.

Argued July 11, 2007.

Filed Dec. 31, 2007.

Richard M. Rosenthal, Pittsburgh, for appellants.

Michael E. Lang, Wexford, for appellee.

BEFORE: HUDOCK, STEVENS, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J:

¶ 1 Constance Jones and Terry Lee Jones, husband and wife, appeal from the trial court's order granting summary judgment in favor of Appellee, Robert Levin, administrator of the estate of Howard Phillip Levin. Following thorough review of the facts and applicable law, we reverse and remand.

¶ 2 The relevant facts and procedural history underlying this appeal are as follows. In December 2002, Constance Jones (hereinafter "Appellant") fell on ice that had accumulated in a parking lot adjacent to the rear entrance of the Levin Furniture Store in Monroeville, Pennsylvania, thereby sustaining personal injuries. The property on which she fell was owned by the estate of Howard Levin (hereinafter "the Levin Estate"), and had been leased on a month-to-month basis beginning in

December 1998, to the family business, Sam Levin, Inc., for the purpose of selling furniture and appliances to the general public through the Levin Furniture Store. Appellant was employed by Sam Levin, Inc., as a salesperson at the Levin Furniture Store, and she was returning to her car after work on the evening that she fell. Appellee, Robert Levin, was both administrator of the Levin Estate and president of Sam Levin, Inc.[1]

¶ 3 In December 2004, Appellant and her husband, Terry Lee Jones, (hereinafter "Appellants") filed a complaint in negligence against Appellee in his capacity as the administrator of the Levin Estate. Appellants alleged that Appellee allowed water run-off, snow, and ice to build up in a depression or irregularity in the parking lot, thereby producing a dangerous condition that led to Appellant's injuries. Appellee filed a motion for summary judgment in September 2006, which, following oral argument, the trial court granted. Appellants filed a timely appeal in which they raise the following two issues:

I. Whether the lower court erred and abused its discretion in finding that the "Levin Estate" did not have "control" of/over the premise on which [Appellant] was caused to slip/fall?

II. Whether the lower court erred in holding that the Restatement (Second) of Torts § 359 is inapplicable to employees of a tenant that are injured on a portion of the leased property that is held open for the admission of the public?

(Appellants' Brief at 4).[2]

¶ 4 In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. *Lackner v. Glosser*, 892 A.2d 21, 29 (Pa.Super.2006). Our Supreme Court has stated the applicable standard of review as follows:

[A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

*Payne v. Commonwealth Department of Corrections*, 582 Pa. 375, 383, 871 A.2d 795, 800 (2005) (citation omitted).

¶ 5 Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. *Lackner, supra* at 29; *see* Pa.R.C.P. 1035.2.[3] If there is evidence that would

---

1. Robert Levin was the brother of Howard Levin and took over as president of Sam Levin, Inc. when Howard Levin died in 1993.

2. We have reversed the order of Appellants' issues for ease of disposition.

3. Rule 1035.2 provides:

   After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

   (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who

allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied. *Lackner, supra* at 29

■ ¶ 6 To prevail in a negligence suit, the complaining party must prove four elements:

1. A duty or obligation recognized by law.
2. A breach of the duty.
3. Causal connection between the actor's breach of the duty and the resulting injury.
4. Actual loss or damage suffered by complainant.

*Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super.2005), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (2006) (citation omitted and emphasis removed).

■ ¶ 7 As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons. *Dorsey v. Continental Associates*, 404 Pa.Super. 525, 591 A.2d 716, 718 (1991); *Kobylinski v. Hipps*, 359 Pa.Super. 549, 519 A.2d 488, 491 (1986); *Henze v. Texaco, Inc.*, 352 Pa.Super. 538, 508 A.2d 1200, 1202 (1986) (citing, *inter alia*, Restatement (Second) of Torts § 356 (1965)). This general rule is based on the legal view of a lease transaction as the equivalent of a sale of the land for the term of the lease. *Deeter v. Dull Corporation, Inc.*, 420 Pa.Super. 576, 617 A.2d 336, 339 (1992). Thus, "liability is premised primarily on possession and control, and not merely [on] ownership." *Id.* In *Kobylinski, supra*, this Court relied on the general rule to reverse a judgment against a landlord out of possession, after he had been found liable in the death of a visitor to a leased residence who had fallen down an unguarded, unlit stairwell on the leased premises. Importantly, the tenant in *Kobylinski* had sole possession of the leased premises for use as a private residence and the decedent was a social guest, or licensee. *Id.* at 489, 492–93.

■ ¶ 8 There are a number of exceptions to the general rule of non-liability of a landlord out of possession, one of which is particularly relevant in the instant case: the landlord may be liable if he or she has reserved control over a defective portion of the leased premises or over a portion of the leased premises which is necessary to the safe use of the property (the "reserved control" exception). *Deeter, supra* at 339; *Smith v. M.P.W. Realty Company, Inc.*, 423 Pa. 536, 539, 225 A.2d 227, 229 (1967); *Dorsey, supra* at 718; *Henze, supra* at 1202–03; Restatement (Second) of Torts § 361. The reserved control exception is most clearly applicable to cases involving "common areas" such as shared steps or hallways in buildings leased to multiple tenants. *See Pagano v. Redevelopment Authority of Philadelphia*, 249 Pa.Super. 303, 376 A.2d 999, 1007 (1977); *see also Dorsey, supra* at 720. However, the applicability of the exception is not limited to such well-defined "common areas." Our Supreme Court invoked the reserved control exception in a case involving an allegedly defective radiator in one tenant's unit of a building occupied by several commercial tenants, after the landlord-owner of the building was sued for negligence by a tenant who had been seriously burned by steam from the radiator. *See Smith, supra* at 538–39, 225 A.2d at 228–29. Importantly, the entire building was served by a central steam-heating system, which was

will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
Pa.R.C.P. 1035.2.

controlled and operated by the landlord. As our Supreme Court explained,

> where the landlord retains control of a part of the leased premises, which is necessary to the safe use of the leased portion, he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control, if by the exercise of reasonable care he could have discovered the condition and the risk involved, and made the condition safe.

*Smith, supra* at 539, 225 A.2d at 229 (citing Restatement (Second) of Torts § 361 and also noting that § 361 had previously been applied to plumbing and heating systems over which the landlord had retained control).

■ ¶ 9 Finally, we consider several principles relevant to the formation of a landlord-tenant relationship. Our Supreme Court has long held that "[t]he relation of landlord and tenant is always created by contract, either express or implied. It cannot exist without such contract[.]" *In re Wilson's Estate*, 349 Pa. 646, 649, 37 A.2d 709, 710 (1944) (citation omitted); *see also J.K. Willison, Jr. v. Consolidation Coal Co.*, 536 Pa. 49, 54, 637 A.2d 979, 982 (1994) (reiterating that "[a] lease is in the nature of a contract and is controlled by principles of contract law.") The lease-contract provides for "possession of lands in consideration of rent to be paid therefor." *Wilson's Estate, supra* at 649, 37 A.2d at 710; *see also 2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia*, 319 Pa.Super. 228, 466 A.2d 132, 137 (1983) ("The obligations of the tenant to pay rent reserved in the lease is at the very heart of the landlord-tenant relationship.") However, it is important to note that the payment of rent is not in all cases essential to the creation of a landlord-tenant relation-

ship. *Pagano, supra* at 1004 (quoting *Wilson's Estate, supra*). The courts have in certain cases concluded that a lease existed despite the lack of rent paid, but in such cases, there was evidence of some form of rent substitute, *i.e.*, an alternative benefit or return to the landlord, offered and accepted as consideration. *Id.* at 1006, 376 A.2d 999 (discussing examples of rent substitutes).

■ ¶ 10 We turn now to the case *sub judice*, first addressing Appellants' contention that there is a genuine issue of material fact as to what entity exercised control over the premises on which the accident occurred. We must agree with Appellants' contention. In Appellants' complaint, they alleged that the property in question was owned by the Levin Estate and was in the possession and control of Appellee, as administrator of the Levin Estate. In answering Appellants' complaint, Appellee did not dispute the Levin Estate's ownership of the property, but he contended that the Levin Estate had leased the property to Sam Levin, Inc., and he offered a written lease, dated December 1, 1998, as evidence of a landlord-tenant relationship between the Levin Estate and Sam Levin, Inc. Based on the lease, Appellee argued that Sam Levin, Inc. had exclusive possession of the property as well as responsibility for maintenance.

¶ 11 The express terms of the 1998 lease provided for a month-to-month tenancy, with Sam Levin, Inc. agreeing to pay the Levin Estate a rent of $4,500 per month and each party retaining the right of cancellation with thirty days' notice. (Lease between the Estate of Howard Levin and Sam Levin, Inc., dated December 1, 1998, at 1–2). There was no evidence that the lease had been subsequently modified, and Appellee stated at his deposition that he was not aware of any revocation or termination of the lease, which he had signed

four years prior to the accident. (Plaintiff's Brief in Support of Motion for Reconsideration of Grant of Summary Judgment, Exhibit E, Deposition of Robert Levin at 45). Importantly, *no* evidence was offered to show that any consideration of any kind actually accrued to the Levin Estate as landlord under the 1998 lease or any other contractual agreement with Sam Levin, Inc. The consideration contemplated by the lease was a monthly rent of $4,500, but when directly asked if Sam Levin, Inc. had paid rent to the Levin Estate, Appellee— the president of the former entity and the administrator of the latter—stated that he did not know. (*Id.*) We reiterate that *no* evidence was offered to support the existence of *any* benefit or return to the Levin Estate from Sam Levin, Inc.'s occupation of the premises in question. In the absence of evidence to support the existence of a benefit or return accruing to the Levin Estate as landlord, and viewing the evidence in the light most favorable to Appellants, the non-moving party, as we must, we conclude that a genuine issue of material fact exists as to whether, at the time of the accident, there was a landlord-tenant relationship governed by the 1998 lease between the Levin Estate and Sam Levin, Inc.

¶ 12 We emphasize that Appellee put forth no theory other than the leasehold theory to support his contention that possession and control of the property at issue was transferred from the owner-Estate to Sam Levin, Inc. Because we have concluded that there is a genuine issue of material fact as to the existence of the leasehold and/or its terms, there is also a genuine issue of material fact as to which entity—Sam Levin Inc. or the Levin Estate—exercised possession and control of the property.

■ ¶ 13 Furthermore, even the terms of the 1998 lease suggested that the Levin Estate retained some control over the property. Although, under the lease, Sam Levin, Inc., as tenant, was responsible for all repairs to the premises, the terms of the lease also provided that the tenant "shall make no structural repairs or alterations without [the Levin Estate's] consent." (Lease at 3). In light of this provision, we conclude that, even under the 1998 lease, there is a genuine issue of material fact as to whether the Levin Estate continued to exercise control over defective portions of the property in question. If the Levin Estate continued to exercise such control, the reserved control exception to the general rule of out-of-possession landlord non-liability may be applicable. *See Dorsey, supra* at 718; *Henze, supra* at 1202–03; *Smith, supra* at 539, 225 A.2d at 229; Restatement (Second) of Torts § 361

¶ 14 Thus, based on our determination that genuine issues of material fact are present in the instant case, we conclude that the trial court erred in granting Appellee's motion for summary judgment. Accordingly, we reverse the trial court's order and remand for further proceedings.

■ ¶ 15 Although our consideration of Appellants' first issue resolves the instant case, we will also address their second issue, as it may arise on remand. Appellants' second issue focuses on another exception—the public use exception—to the general rule that a landlord out-of-possession is not liable for injuries to third parties on the leased premises. Under this exception, a landlord out-of-possession may be liable if he or she has leased the premises for a purpose involving admission of the public and has failed to inspect for or repair dangerous conditions prior to transferring possession of the property. *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 89 n. 10, 394 A.2d 546, 553 n. 10 (1978); *Dorsey, supra* at 718; *Yarkosky v.*

*The Caldwell Store, Inc.*, 189 Pa.Super. 475, 151 A.2d 839, 842 (1959); Restatement (Second) of Torts § 359.[4] The rationale for this exception "lies in the lessor's responsibility to the public, which he is not free to shift to the lessee in any case where he has reason to expect that the lessee will admit the public before the land is put in reasonably safe condition for [the public's] reception." Restatement (Second) of Torts § 359 comment a (1965).

¶ 16 The public use exception was the basis for the holding in *Yarkosky, supra,* in which this Court concluded that the landlords as well as the operators of a department store were properly held liable in the injury of a customer who tripped over a pipe protruding from the wall. In so concluding, the Court determined that the owner-landlord had leased the premises "for [a] purpose which involved the admission of a large number of persons as patrons of the lessee" and also had knowledge of the condition of the premises and the risk therein at the time of the lease. *Id.* at 842 (quoting Restatement (First) of Torts § 359).[5]

¶ 17 Subsequently, our Supreme Court, citing *Yarkosky,* noted that Section 359 of the Restatement (Second) of Torts could properly be invoked to impose liability on the non-possessory lessor of a sports stadium for injuries suffered by a spectator who was hit by an errant baseball. *Jones, supra* at 89 n. 10, 394 A.2d at 553 n. 10.

¶ 18 The injured plaintiffs in *Jones* and *Yarkosky* were, respectively, a spectator at a baseball game and a shopper in a department store, *i.e.,* members of the public who had come onto the respective premises for the purpose for which the premises had been opened to the public. *Jones, supra* at 87 n. 9, 394 A.2d at 552 n. 9; *Yarkosky, supra* at 841. In the instant case, Appellant, the injured party, was not a member of the general public shopping in the tenant's store, but rather was an employee of the tenant. The trial court concluded that because, at the time of the accident, Appellant was not a member of the general shopping public, but rather was an employee of the tenant, she could not invoke the public use exception. (Trial Court Opinion, dated February 9, 2007, at 4).

¶ 19 Pennsylvania law has not directly addressed the issue of whether the public use exception is applicable to a tenant's employee who has been injured on the leased premises. However, one of the comments following Section 359 suggests a narrow interpretation of this question:

4. Section 359 provides the following:
A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor
(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and
(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and
(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.
Restatement (Second) of Torts § 359.

5. The holding in *Yarkosky* relied on the version of Section 359 in the *First* Restatement of Torts. The First Restatement expressly stated that the public use exception required that the premises be leased for a purpose involving the admission of a large number of patrons. This requirement was eliminated in the Second Restatement: "It is not necessary that the public shall enter, or be expected to enter, in large numbers at one time. The rule applies equally where the purpose of the lease involves the admission of the public two or three at a time, as in the case of a small beauty shop, or a doctor's office." Restatement (Second) of Torts § 359, comment d.

[The landlord] is not subject to liability to invitees of the lessee who come upon the premises for a business purpose other than that for which they are open to the public, as in the case of a truck driver delivering provisions to a restaurant. The lessor is not liable to licensees of the lessee who come for another purpose, as in the case of the friend of the restaurant keeper who comes to pay a social call.

Restatement (Second) of Torts § 359 comment e (1965).

¶ 20 Courts in other jurisdictions have cited this comment in declining to impose liability on owner-landlords for injuries suffered on their leased premises by tradesmen who came onto the premises at the behest of the tenant for work-related activities. *See Rollo v. Kansas City,* 857 F.Supp. 1441, 1443–45 (D.Kan.1994) (holding, under Kansas law, that a plumber, who was injured while inspecting the leased premises in order to prepare an estimate for plumbing work, had not entered the premises for the purpose for which they were leased, and thus could not rely on the public use exception); *Horstman v. Glatt,* 436 S.W.2d 639, 641, 643 (Mo.1969) (concluding that a repairman, working on a leased hotel's electric sign when he was injured, was not protected by and thus could not recover under the public use exception in his assertion of owner-landlord liability).

¶ 21 Similarly, a Connecticut court concluded that an employee of a photography studio could not rely on the public use exception in her personal injury suit against the studio's landlord. *Stevens v. Polinsky,* 32 Conn.Supp. 96, 341 A.2d 25, 27 (1974). The *Stevens* court also provided a second rationale for the injured plaintiff's inability to recover from the landlord: the injury took place on a portion of the premises neither used nor intended for use by the general public. *Id.* at 27–28.

¶ 22 In contrast to the jurisdictions discussed above, New York *does* permit employees to recover under the public use exception, but only if the employee's injuries were sustained in an area of the leased premises that was open to the public and not reserved for employees. *Brady v. Cocozzo,* 174 A.D.2d 814, 570 N.Y.S.2d 748 (1991) (affirming the trial court's denial of the defendant-landlord's motion for summary judgment in a personal injury action filed by an employee at the leased premises, a gas station, after she was injured in a public restroom of the station); *Strade v. Ryan,* 97 A.D.2d 880, 470 N.Y.S.2d 707 (1983) (holding that the public use exception was not applicable because the injury to the tenant's employee occurred in an area of the leased premises that was not open to the public, but was used only by employees).

¶ 23 After careful consideration of the issue, we have concluded that New York's view of the public use exception is preferable. The rationale for the public use exception is protection of the public. Accordingly, we prefer New York's broader interpretation of the exception in order to provide a higher level of protection. A dangerous condition of land open to the general public is no less dangerous because the party who happens to suffer injury from the condition is present on the land as an employee. So long as the injury occurs on a portion of the leased premises open to the general public, we do not believe that landlord liability should be precluded solely because the injured party happens to be an employee of the tenant. To conclude otherwise seems entirely too capricious and would serve to undermine the protection properly accorded the public.

¶ 24 In summary, we reverse the trial court's order granting summary judgment in favor of Appellee and we remand for further proceedings.

¶ 25 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 26 HUDOCK, J., concurs in the result.