J-S63018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA SCHOUPPE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIRBY UPRIGHT, D/B/A | : | No. 1687 EDA 2019 |
| LAMPLIGHTER ASSOCIATES AND | : | |
| KIRBY UPRIGHT, D/B/A | : | |
| LAMPLIGHTER ASSOCIATES GP | : | |

Appeal from the Order Entered May 1, 2019
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 6240-CV-2017

BEFORE:   GANTMAN, P.J.E., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED DECEMBER 09, 2019**

Patricia Schouppe (Appellant) appeals from the order granting summary

judgment in favor of Kirby Upright, D/B/A Lamplighter Associates and

Lamplighter Associates GP (collectively, Lamplighter).  We affirm.

The parties do not dispute the facts of this case.  On February 14, 2014,

at approximately 10:00 a.m., Appellant entered the Blakeslee Post Office in

Blakeslee, Monroe County, Pennsylvania, to retrieve her mail.  The Blakeslee

Post Office sits on land owned by Lamplighter and leased to the United States

Postal Service (USPS).  Upon leaving the post office, Appellant was walking

_____

[*] Retired Senior Judge assigned to the Superior Court.

back to her car when she slipped on a patch of snow and ice in the parking lot. Appellant sustained injuries to her right arm, neck, back, and right leg.

On August 16, 2017, Appellant filed a complaint against Lamplighter in which she alleged Lamplighter was negligent for failing to ensure that the property was safe for use by business invitees and for failing to warn her of any dangers existing on the property. Appellant also raised a claim of vicarious liability against Lamplighter's employees for their failure to maintain the property in a manner that would have prevented her injuries.

On December 26, 2017, Lamplighter filed a joinder complaint, joining the Blakeslee Post Office and USPS as additional defendants. On March 9, 2018, the United States Attorney for the Middle District of Pennsylvania filed a notice of removal of the matter to federal court. Following the dismissal of the Blakeslee Post Office and USPS as defendants, the United States District Court for the Middle District of Pennsylvania remanded the case to state court in Monroe County.

On August 20, 2018, Lamplighter filed an answer and new matter in which it averred, *inter alia*, that it was a landlord out-of-possession of the property and the lease between Lamplighter and USPS provided that all snow and ice removal was the responsibility of USPS.[1] On March 18, 2019, following

_____

[1] We note that in its answer and new matter, Lamplighter averred that Appellant's claims were barred by the applicable statute of limitations. On the record before us, this defense might be meritorious. Lamplighter, however,

the completion of discovery, Lamplighter filed a motion for summary judgment. On May 1, 2019, the trial court entered an order granting summary judgment in favor of Lamplighter and against Appellant. This timely appeal followed.[2]

Appellant presents the following issues for review:

1. Did the [t]rial [c]ourt err as a matter of law by granting [Lamplighter]'s Motion for Summary Judgment as the record clearly demonstrates that there are genuine issues of material fact such that the moving party is not entitled to judgment as a matter of law?

2. Did the [t]rial [c]ourt err as a matter of law wherein it did not take all facts of record and reasonable inferences therefrom in the light most favorable to the non-moving party ([Appellant])?

3. Did the [t]rial [c]ourt err as a matter of law by not resolving all doubts as to the existence of a genuine issue of material fact against the moving party, and by granting Summary Judgment where the right to such judgment was not clear and free from all doubt?

Appellant's Brief at 4.

_____

did not pursue the defense in its motion for summary judgment, and therefore, has waived it for purposes of this appeal. *See Paves v. Corson*, 765 A.2d 1128, 1134 (Pa. Super. 2000), *rev'd on other grounds*, 801 A.2d 546 (Pa. 2002) (holding that defendant waived statute of limitations defense despite raising it in the pleadings because defendant did not raise it "at any time prior to the motion for directed verdict[,]" and consequently, defendant never presented evidence relating to the defense and plaintiff had no opportunity for rebuttal).

[2] On May 24, 2019, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b); on June 12, 2019, Appellant filed a timely Rule 1925(b) statement.

Our standard of review regarding a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014).

Although Appellant lists three issues in the Statement of the Questions Involved section of her appellate brief, she essentially makes two arguments in support of her challenge to the trial court's decision to grant summary judgment. First, Appellant argues that an ambiguity exists in the lease regarding whether Lamplighter or USPS is responsible for snow and ice removal on the property. Appellant contends that this ambiguity constitutes a disputed material fact, and thus, summary judgment was inappropriate.

Our Supreme Court has set forth the principles governing contract interpretation:

> The principles that guide this inquiry are well-settled. The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. ***Robert F. Felte, Inc. v. White***, 302 A.2d 347, 351 (Pa. 1973). In cases of a written contract, the intent of the parties is the writing itself. ***Pines Plaza Bowling, Inc. v. Rossview, Inc.***, 145 A.2d 672 (Pa. 1958). Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. ***See Shovel Transfer & Storage, Inc. v. PLCB***, 739 A.2d 133, 139 (Pa. 1999). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. ***Hutchison v. Sunbeam Coal Corp.***, 519 A.2d 385, 390 (Pa. 1986). When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. ***Steuart v. McChesney***, 444 A.2d 659, 663 (Pa. 1982); ***In re Herr's Estate***, 161 A.2d 32, 34 (Pa. 1960). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004). While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. ***Id.***

***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468-69 (Pa. 2006) (citations modified).

With respect to snow removal, the lease between Lamplighter and USPS expressly states:

**8. SNOW**

The Postal Service agrees to furnish and pay for the snow removal from the sidewalks, driveway, parking and maneuvering areas, and any other areas providing access to the postal facility for use by postal employees, contractors, or the public (including, but not limited to, stairs, handicap access ramps, carrier ramps, etc.) during the continuance of the Lease. The landlord is responsible for snow removal from the roof.

Motion for Summary Judgment, 3/18/19, Exhibit A (Lease, 6/10/08, Utilities, Services & Equipment Rider ¶ 8).

Appellant, however, argues that the following portions of the Maintenance Rider in the lease contradict the snow removal provision:

3. During the continuance of the Lease, the Landlord is responsible for maintenance of, repairs to, and, if necessary, replacement of:

a. All common or joint use interior and exterior areas and common or joint use equipment and systems that may be included as part of this lease.

Motion for Summary Judgment, 3/18/19, Exhibit A (Lease, 6/10/08, Maintenance Rider – USPS Responsibility ¶ 3(a)). Appellant asserts that because the Maintenance Rider made Lamplighter responsible for the maintenance of common areas, the lease is unclear as to whether USPS or Lamplighter is responsible for snow removal in the parking lot.

Upon review, we conclude that the lease is unambiguous as to USPS's responsibility for snow removal in the parking lot. While the lease contains a general clause stating that Lamplighter is responsible for "maintenance of, repairs to, and, if necessary replacement of . . . [a]ll common or joint use interior and exterior areas[,]" *see id.*, the lease also contains a specific provision stating that USPS is responsible for snow removal. *See* Motion for Summary Judgment, 3/18/19, Exhibit A (Lease, 6/10/08, Utilities, Services & Equipment Rider ¶ 8).

This Court has explained:

It is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects. Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement. Furthermore, the specific controls the general when interpreting a contract.

**Trombetta v. Raymond James Fin. Servs., Inc.**, 907 A.2d 550, 560 (Pa. Super. 2006) (citations omitted). "It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole." **Shehadi v. Ne. Nat'l Bank of Pa.**, 378 A.2d 304, 306 (Pa. 1977).

**Sw. Energy Prod. Co. v. Forest Res., LLC**, 83 A.3d 177, 187 (Pa. Super. 2013) (citations modified).

Were we to interpret the general language of Paragraph 3(a) of the Maintenance Rider to indicate that Lamplighter and USPS intended for Lamplighter to retain responsibility for snow removal, it would annul the specific language of Paragraph 8 (**SNOW**) of the Utilities, Services & Equipment Rider. Such a reading would directly contradict the contract interpretation principles set forth in **Southwest Energy**. Moreover, there is no language in the lease indicating that the parties intended for the provision stating that Lamplighter's obligation to maintain, repair, and replace (if necessary) common and joint use areas included the responsibility of snow removal in the parking lot. Consequently, the lease is not reasonably susceptible of different constructions or capable of being understood in more than one sense regarding USPS's responsibility for snow removal in the parking lot. **See Ins. Adjustment Bureau**, 905 A.2d at 468-69. To the

contrary, the lease is unambiguous in its express terms stating that USPS was responsible for snow removal in the parking lot. *See* Motion for Summary Judgment, 3/18/19, Exhibit A (Lease, 6/10/08, Utilities, Services & Equipment Rider ¶ 8). Accordingly, Appellant's argument that summary judgment was inappropriate because an ambiguity exists in the lease regarding responsibility for snow removal is meritless.

Second, Appellant argues that although Lamplighter was a landlord out-of-possession of the property, Lamplighter was still responsible for her injuries under the public use exception to the landlord out-of-possession rule. Appellant asserts that the public use exception "creates landlord liability if the landlord knew or should have known the leased premises were to be used for purposes involving admission to the public." Appellant's Brief at 27.

"As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007). There are, however, several exceptions to this general rule:

> A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) **if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee**; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if

the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

***Dorsey v. Cont'l Assoc.***, 591 A.2d 716, 718-19 (Pa. Super. 1991) (emphasis added, citations omitted).

With respect to the public use exception, we have explained:

[A] landlord out-of-possession may be liable if he or she has leased the premises for a purpose involving admission of the public and has failed to inspect for or repair dangerous conditions **prior** to transferring possession of the property. Restatement (Second) of Torts § 359. The rationale for this exception "lies in the lessor's responsibility to the public, which he is not free to shift to the lessee in any case where he has reason to expect that the lessee will admit the public **before** the land is put in reasonably safe condition for [the public's] reception." Restatement (Second) of Torts § 359 comment a (1965).

***Levin***, 940 A.2d at 456-57 (emphasis added, citations and footnote omitted).

Based upon our review of the record and the aforementioned authority, the public use exception is inapplicable to this case. As Appellant concedes in her appellate brief, the public use exception applies where a landlord fails to inspect the property for or repair dangerous conditions **before** transferring possession to the tenant. ***Id.*** In this case, there is no evidence that a dangerous condition existed in the parking lot of the Blakeslee Post Office that Lamplighter failed to inspect or repair prior to transferring possession to USPS. ***See id.*** Given the ever-changing nature of weather, it was not possible for Lamplighter to predict, years in advance, that it was going to snow on the date in question and take steps prior to transferring possession of the property

to USPS to prevent Appellant's injury. Therefore, Appellant's public use exception argument lacks merit.

As there are no disputed material facts and Lamplighter was entitled to judgment as a matter of law, the trial court did not err in granting Lamplighter's motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/19