J-S03033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM LEE CLARK AND HOLLY CLARK, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 777 WDA 2021 |
| PHANTOM ENTERPRISES, LP; DONALD J. ROSSI, MICHAEL J. ROSSI, AND JAMES D. ROSSI, T/D/B/A PHANTOM ENTERPRISES, PHANTOM ENTERPRISES, INC., AND PHANTOM MANAGEMENT, LLC | : | |

Appeal from the Order Entered June 8, 2021
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  4955 of 2016

BEFORE:  LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED: FEBRUARY 28, 2022**

William Lee Clark and Holly Clark, husband and wife (collectively, Tenants), appeal from the order entered in the Court of Common Pleas of Westmoreland County (trial court) granting the motion for summary judgment of Phantom Enterprises, LP (Landlord), *et al.* in this personal injury action holding that there was no genuine issue of material fact that Landlord was not responsible for William Lee Clark's injuries which incurred on a portion of the property that Tenants had leased.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We take the following factual background and procedural history from the trial court's June 8, 2021 opinion and our independent review of the record.

**I.**

On September 5, 2012, a residential lease between Tenants and Landlord commenced for the rent of the "leased property" identified as the single home at 476 Youngstown Ridge Road, Latrobe, Pennsylvania 15650. (*See* Residential Lease, 9/15/12, at ¶¶ 2, 3). On November 14, 2014, Tenant William Lee Clark slipped and fell on a walkway on their Latrobe side of the driveway of the leased property on "black ice." As a result, he sustained injuries, including a fractured femur that required surgery.

On November 10, 2016, Tenants filed a complaint against Landlord alleging negligence and breach of contract contending that the lack of gutters on the property caused the black ice on which he fell.[1] Landlord responded that the black ice was the defective condition, not the lack of gutters, and as landlord out of possession, it had no duty to Tenants to remove and treat the area for potential black ice. (Trial Court Opinion, 6/08/21, at 1-2).

After the pleadings were closed, Landlord filed a motion for summary judgment relying on the following evidence educed through discovery. The

---

[1] On January 26, 2016, Landlord notified Tenants in writing that the residential lease would be terminated effective January 31, 2016.

residential lease entitled Tenants to possession of the residence, while a portion of the property with a garage remained in the possession of Landlord for business use. The residence was located on the left side (Latrobe side) of the driveway from the garage, and to the right of the garage was the Ligonier side of the driveway. (Trial Court Opinion, 6/08/21, at 1).

The residential lease was silent as to who retained control over roof and/or gutter repairs on the residence, which was a round structure. Paragraph 13 of the residential lease provided that Landlord was not liable for any injury to any person while on the leased property. (*See* Residential Lease, at ¶ 13). Landlord agreed to keep the "electrical, plumbing, sanitary, heating, and all other services" in good repair and working order and, if any of the identified items were not kept in such condition, Tenants were to notify Landlord in writing. (*See id.* at ¶ 18). Tenants agreed not to paint the walls of the leased property a different color, install a border or wallpaper or install ceiling tiles or other objects that would require drilling into floors, doors or ceilings. (*See id.* Residential Lease, at ¶ 11(a)).

At his deposition, William Lee Clark testified that he inspected the property half a dozen times and identified the lack of gutters before signing the residential lease. Holly Clark similarly testified that she and her husband were aware that there were no gutters on the residence at the time of signing the residential lease and claimed Landlord had removed them because of their unpleasant appearance. (*See* Deposition of William Lee Clark, 3/11/19, at

192); (Deposition of William Lee Clark, 9/03/19, at 332-33); (Deposition of Holly Clark, 9/03/19, at 32-33).

The Tenants' expert witness report stated that the failure to have gutters on a residence can create a hazardous condition for accumulation of water and ice; and Landlord's groundskeeper, Duane W. Gaskill, testified that he believed all properties needed gutters and downspouts. (*See* Deposition of Duane W. Gaskill, 4/10/19, at 14);(Expert Report of Secosky & Associates, Inc., 1/02/19, at, 2-3).

Mike Rossi, an appellee herein and a representative of Landlord, testified at his deposition that he did not believe gutters were on the home when Landlord purchased it. At no time did Landlord or anyone on its behalf remove gutters and downspouts from the residence. The appraisal photo taken prior to Landlord's purchase confirms that there were no gutters on the house. (*See* Amended Motion for Summary Judgment, at Exhibit M, Appraisal Photograph). There is no code requirement that gutters must be on a residence. Rossi testified that Landlord replaced the rubber roof on the home in 2004. (*See* Deposition of Mike Rossi, 12/07/17, at 18-19, 40-42, 105).

Roofing contractor Mike Bauer testified that he put the new roof on the house and added a peak so that it sloped so that no ice and snow would lay on top of it. Because the house was round, any gutters would have to be fabricated, but no gutters were put on when he was there doing the work. He did not speak to Mike Rossi about gutters but was told by Todd Kimmick that

Mike Rossi did not want them. (*See* Deposition of Mike Bauer, at 9, 17-18, 33).

William Lee Clark agreed that Tenants were responsible for maintenance, including shoveling and salting, from the left side of the garage area (the Latrobe side) to the residence, and the Landlord was responsible for maintenance of the area to the right side of the garage (the Ligonier side). (*See* Deposition of William Lee Clark, 3/11/19, at 203-04). On January 2, 2013, on behalf of Landlord, Mike Rossi confirmed this understanding in an email to Tenants in which he stated:

> Just wanted to make sure we are all on the same page we do not plow rentals it is up to the renter to keep up with their driveway area. … On occasion when we need use of the rear garage we will plow it so we have access to it but it does not happen at every snowfall and when doing so we will plow as much as the driver feels [comfortable] doing.

(Email Correspondence, 1/02/13).

Holly Clark testified that Landlord occasionally allowed Tenants to place belongings in and use the garage, and that Landlord's agents plowed the driveway area on the Latrobe side on occasion. The handymen who worked on the property testified that although they would plow the driveway around the garage and sometimes throw salt down there as a courtesy, they did not perform snow shoveling or salting of the Tenants' property, specifically on the area where William Lee Clark fell. (*See* Holly Clark Statement of Fact, 5/19/21, at ¶ 4); (Deposition of Holly Clark, at 40, 46); (Deposition of Todd

M. Kimmick, 4/10/19, at 45-46); (Deposition of Duane T. Gaskill, 4/10/19, at 11-12, 23-24); (Deposition of Larry Telford, 3/14/19, at 12, 38-39, 43-44).

William Lee Clark testified that on the date of the incident, he "never really thought of [the wet area] being ice" because the weather was a relatively warm fifty degrees; he never saw black ice in the area where he fell on any other occasion; and he never complained about black ice to Landlord. Holly Clark stated that she had alerted Landlord to a flooding issue in which water came through the carport and into the kitchen, but that this was not the cause of William Lee Clark's fall. (**See** Deposition of William Lee Clark, 3/11/19, at 130); (Deposition of William Lee Clark, 9/03/19, at 347-38); (Deposition of Holly Clark, at 59-60).

After oral argument on the motion for summary judgment, the trial court gave the parties the opportunity to submit additional briefs in support of their positions, which they did. Landlord argued that it did not have a duty to Tenants because it was a landlord out of possession with no responsibility for snow removal and salting in the area where William Lee Clark fell. In response, Tenants argued that there was an issue of fact as to whether Landlord was in or out of possession and as to whether the defective condition, *i.e.*, the lack of gutters, created a dangerous condition by interfering with the water runoff on the leased property. After a review of the record and counsel's arguments, the court granted summary judgment in favor of Landlord.

Tenants timely appealed and complied with Rule 1925(b) by filing a statement of errors on appeal. *See* Pa.R.A.P. 1925(b).

**II.**

**A.**

On appeal, Tenants first argue that the trial court erred in granting Landlord's motion for summary judgment because there was a genuine issue of material fact about whether they were business invitees whom Landlord owed an increased duty of care. (*See* Tenants' Brief, at 8).[2]

The Restatement (Second) of Torts defines a possessor of land as, *inter alia*, "a person who is in occupation of the land with intent to control it[.]" Restatement (Second) of Torts § 328E (1965). It is well-established that "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or

---

[2] "To prevail in a negligence suit, the complaining party must prove four elements: 1. A duty or obligation recognized by law[;] 2. A breach of the duty[;] 3. Causal connection between the actor's breach of the duty and the resulting injury[; and] 4. Actual loss or damage suffered by complainant." *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007) (citation omitted). "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Here, it is undisputed that the residential lease did not contain any terms regarding the care of gutters and roof, and the parties confine their argument to the duty and breach prongs necessary for a negligence action.

invitee." ***Cholewka***, ***supra*** at 1027 (case citation, quotation marks, footnotes omitted).

"A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land." ***Walker v. Drexel Univ.***, 971 A.2d 521, 524 n.1 (Pa. Super. 2009) (citation omitted); ***see also*** Restatement (Second) of Torts § 332. "The landowner's duty of protection toward business visitors is the highest duty owed to any entrant upon land, and the landowner is under an affirmative duty to protect the business visitor not only against dangers which he knows, but also against those which with reasonable care he might discover." ***Id.*** (citation omitted).

Tenants' bald claim that they were business invitees because Landlord's business was leasing property lacks merit where they possessed the leased property pursuant to a lease agreement. ***See Cholewka***, ***supra*** at 1028 (Tenant was possessor of land by virtue of lease with landlord; he was not trespasser, licensee or invitee).[3] Instead, Landlord's duty to Tenants was pursuant to landlord-tenant law.

---

[3] In fact, the cases on which they rely are inapposite. They involve a slip and fall at a hospital to which the decedent had gone for treatment and a non-binding federal district court case in which a plaintiff slipped and fell on soda in a mall. (***See*** Tenants' Brief, at 9); (citing ***Estate of Swift v. Northeastern Hosp. of Phila.***, 690 A.2d 719 (Pa. Super. 1997); ***Craig v. Franklin Mills Associates, L.P.***, 555 F.Supp.2d 547 (E.D. Pa. 2008)). These situations are
*(Footnote Continued Next Page)*

**B.**

As to the duties owed to each other under the landlord tenant law, "[T]he relation of landlord and tenant is always created by contract, either express or implied. It cannot exist without such contract[.]" ***Jones v. Levin***, 940 A.2d 451, 455 (citations omitted). In ***Keiper v. Marquart***, 159 A.2d 33 (Pa. Super. 1960), we set forth a landlord's liability for injuries that tenant sustained on the leased premises, stating:

> On the question of the general liability of a landlord to his tenant for injuries received by the tenant on the premises, it is well established that, in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental, or to keep the premises in repair; and **that a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection. A lessor is not subject to liability for bodily harm caused to his lessee by any dangerous condition, whether natural or artificial, which existed when the lessee took possession, and which the lessee knew, or should have known by reasonable inspection, existed.** (Citations omitted). (Emphasis added.)

***Keiper***, ***supra*** at 34-35 (citations omitted; emphasis added).

In his deposition, William Lee Clark agreed that Tenants were responsible for maintenance, including shoveling and salting, from the left side of the garage area (the Latrobe side), the area where he fell. Moreover, the testimony is undisputed that Tenants were aware of the lack of gutters before

---

distinguishable from the one presented here and do not support Tenants' claim that they were business invitees.

they signed the residential lease and discussed it with Landlord Mike Rossi during one of Tenants' inspections of the property.  (**See** Deposition of William Lee Clark, 3/11/19, at 192); (Deposition of William Lee Clark, 9/03/19, at 332-33); (**See** Deposition of Holly Clark, 9/03/19, at 32-33).  Based on the general rule of liability, even assuming the lack of gutters was a defect, Landlord was not liable to Tenants because Tenants were aware of it before signing the residential lease.  **See Marquart**, **supra** at 34–35.

**C.**

Tenants argue, however, that there is a genuine issues of material fact about whether Landlord, even if out of possession, maintained limited possession and control over the premises and whether it exercised reasonable care to discover the hazardous condition caused by the lack of gutters.  (**See** Tenants' Brief, at 11-16).  They maintain that the court improperly made inferences from the facts in a light most favorable to Landlord by finding that it would have been reasonable to argue that Tenants should have known that the lack of gutters could have caused the pooling water and ice.

> … [W]here the landlord retains control of a part of the leased premises, which is necessary to the safe use of the leased portion, he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control, if by the exercise of reasonable care he could have discovered the condition and the risk involved, and made the condition safe. …
>
> In order to warrant a finding that [a] landlord-defendant failed to exercise reasonable care in discovering and correcting the alleged dangerous condition, it [is] necessary for the plaintiff

to establish that the defendant had either actual or constructive notice of the condition.

***Smith v. M.P.W. Realty Co.***, 225 A.2d 227, 229 (Pa. 1967) (citations omitted).

Here, there is nothing in the residential lease granting Landlord limited possession and control of the roof, including any gutter system. We are not persuaded by Tenants' argument that Paragraphs 11 and 18 of the residential lease led to the reasonable inference that Landlord possessed and controlled the gutters. (***See*** Tenants' Brief, at 11-15). Section 11 prohibits Tenants from making certain changes inside the residence, and Section 18 directs that Landlord shall "keep the electrical, plumbing, sanitary, heating and other services" in good repair. (Residential Lease, at ¶ 18); (***see id.*** at ¶ 11).[4] This language is clear and specific, omitting any mention of the care of the residence's roof.[5]

_____

[4] Although not a fact found by the trial court, we note that if Section 18 did apply to the roof and gutters, had Tenants found that they were "not in good repair or working order[,]" they were under a duty to advise Landlord in writing, which there is no evidence that they did. (***See*** Residential Lease, at § 18.b).

[5] Tenants' reliance on ***Pierce v. Philadelphia Hous. Auth.***, 486 A.2d 1004, 1005 (Pa. Super. 1985), does not change this disposition because it is factually distinguishable. In ***Pierce***, the Philadelphia Housing Authority (PHA) was acting as both lessor and lessee, and we were required to determine, based on the specific language of the lease between PHA and the building owner, which of the two were liable to a third-party repairman (business invitee) who fell on the premises, not a tenant.

However, although the residential lease did not establish Landlord's duty regarding the roof, evidence established that Landlord had a new rubber roof with a slope put on the residence in 2004 so ice and snow would not lay on top of it and had work performed in the driveway (not the walkway where William Lee Clark fell) to divert the flow of water. (**See** Deposition of Mike Rossi, 12/07/17, at 40-42); (Deposition of Mike Bauer, at 9, 17-18, 33). Viewing this evidence in the light most favorable to Tenants as non-moving parties, it would be reasonable to infer that Landlord had limited possession of the roof for the purpose of safety issues regarding the control of water on the property. **See Smith**, **supra** at 229.

Nevertheless, this does not end our inquiry, because there is no genuine issue of material fact about whether Landlord had notice of the alleged dangerous condition caused by the lack of gutters. **See Smith**, **supra** at 539 (citation omitted).

It was undisputed that Tenants had lived at the leased property through two winters prior to William Lee Clark's accident. He had seen ice on the walkway he was responsible for maintaining prior to the date of the incident and he testified he would clear and salt the area. There is no evidence that he reported to Landlord that ice on Tenants' walkway was being caused by the lack of gutters. (**See** Deposition of William Lee Clark, 3/11/19, at 203-04); (Deposition of William Lee Clark, 9/03/19, at 347-48); (Deposition of Holly Clark, 9/03/19, at 59-60). On the date in question, the temperature was in

the fifties and water was dripping off the roof due to melting snow when William Lee Clark fell on black ice, which he stated he had neither seen nor reported to Landlord prior to that date. (**See** Deposition of William Lee Clark, 9/03/19, at 347-48).

Based on the foregoing, as a matter of law, even if Landlord maintained limited possession and control of the roof, it had not received any constructive or actual notice that the lack of gutters created a hazardous icy condition and, therefore, it could not be found negligent. **See Smith**, **supra** at 230.[6]

In summary, as properly found by the trial court, even if the lack of gutters was a defect, Landlord had no obligation to repair it where there was no contractual agreement that it do so, and Tenants were aware that there were no gutters at the time of entering the residential lease. Moreover, even if Landlord had a duty to Tenants to control the roof run-off because they

_____

[6] Tenants' reliance on **Smith** for the proposition that Landlord was liable because it failed to exercise reasonable care in discovering the dangerous condition, is not persuasive and, in fact, the case supports the grant of summary judgment in this matter. There, the landlord controlled and operated a central steam heating system. Appellant tenant was injured when, upon discovering that a heating air vent was cold and in an improper position, he attempted to move it, resulting in severe burns due to steam and hot water. He argued that the vent had been in a state of disrepair for a long time and that landlord should have discovered this with the exercise of reasonable care. However, this Court agreed with the trial court that where tenant had never advised landlord about a lack of heat, landlord could not be found to have actual or constructive notice that there was any problem with the vent and, thus, was not negligent. **See Smith**, **supra** at 230. Similarly, here, Tenants did not advise Landlord of any issue due to the lack of a gutter system.

maintained limited possession and control of the roof, it had no actual or constructive notice that a dangerous condition had been caused due to the lack of gutters. **See Smith**, **supra** at 230.

For all these reasons, we conclude that the trial court properly found[7] that Landlord did not violate a duty to Tenants and could not be negligent as a matter of law. (**See** Trial Court Opinion, 6/08/21, at 6); **Marquart**, **supra** at 34–35.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022

---

[7] Tenants argue that the trial court, in effect, found that they assumed the risk of the lack of gutters. We disagree. The trial court applied well-established landlord-tenant law as discussed above.