J-S39005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ARMEL J. BAXTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TIMES LEADER, TIMES LEADER | : | No. 158 MDA 2023 |
| MEDIA GROUP, A CIVITAS MEDIA | : | |
| LLC CO., AND EDWARD LEWIS | : | |

Appeal from the Order Entered December 12, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2018-10857


BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:          **FILED: NOVEMBER 9, 2023**

Appellant, Armel J. Baxter, appeals *pro se* from the December 12, 2022 Order entered in the Luzerne County Court of Common Pleas granting the motion for summary judgment filed by Appellees, Times Leader, Times Leader Media Group, A Civitas Media LLC Co. ("Civitas"), and Edward Lewis ("Appellees") and entering judgment in Appellees' favor in this Defamation action.[1]  After careful review, we affirm.

The relevant facts and procedural history are as follows.[2]  On January 25, 2019, Appellant filed an Amended Complaint against Appellees raising

_____

[1] This order also denied Appellant's Motion for Summary Judgment, Motion for Sanctions, and Request for Amendment of Pleadings.

[2] By way of further background, Appellant is currently serving a life sentence imposed following his February 5, 2009 jury conviction of First-Degree Murder, Criminal Conspiracy, and Possession of an Instrument of Crime.

claims of Defamation and Malice, and seeking declaratory judgment, compensatory damages, and punitive damages.[3]   In particular, Appellant asserted that on September 8, 2017, Cassandra Blauch visited him at SCI Coal Township and informed him that, on July 12, 2007, Appellee Edward Lewis wrote, and Appellee Civitas published, a news article that Appellant characterized as defamatory because it "insinuated [that Appellant] was connected to an alleged rape investigation."[4]

Appellees filed Preliminary Objections to the Amended Complaint, which the trial court overruled in part and sustained in part.  Ultimately, the only claim that survived preliminary objections was Count I—Defamation.

On May 31, 2022, Appellees filed a Motion for Summary Judgment asserting that Appellant's claim was barred by the one-year statute of limitations.[5]   Appellees also moved for summary judgment on the grounds that: (1) Appellant had failed to allege facts to establish a necessary element of the claim, *i.e.*, the defamatory character of the communication, and (2) that the statements in the article are protected by the fair report privilege.[6]

_____

[3] Appellant's initial *pro se* Complaint was docketed by the lower court clerk on September 19, 2018.

[4] Amended Complaint, 1/25/19, at ¶ 19.

[5] 42 Pa.C.S. § 5523.

[6] The fair report privilege protects the press from liability for the publication of defamatory material if the published material reports on an official action or proceeding.  **Sciandra v. Lynett**, 187 A.2d 586, 588-89 (Pa. 1963).  Our
*(Footnote Continued Next Page)*

Appellant filed an Answer in which he conceded the one-year statute of limitations for Defamation claims, but argued that, because he did not become aware of the allegedly defamatory article until after he had been incarcerated, he should be able to avail himself of the discovery rule which would operate to toll the running of the statute of limitations. He claimed that because he has not had internet access since his arrest on July 10, 2007, he was neither aware nor reasonably should have been aware of the article's existence until Ms. Blauch's visit to SCI Coal Township in September 2017. Thus, he concluded that his Defamation claim was not barred by the statute of limitations. Appellant also disputed Appellees' assertions that he had failed to plead sufficient facts to prove the defamatory nature of the article and that the fair report privilege applied to protect Appellees from liability.

Following a hearing, the trial court granted Appellees' motion for summary judgment. The court determined that the discovery rule did not apply to toll the one-year statute of limitations and that, therefore, Appellant's Defamation claim, brought more than 10 years after publication of the allegedly defamatory article was time-barred. The court also determined that Appellant's Defamation claim failed as a matter of law because the article was not defamatory.

---

Supreme Court explained that no liability attaches so long as the account of the official action or proceeding is "fair, accurate[,] and complete, and not published "solely for the purpose of causing harm to the person defamed[.]" ***Id.*** at 589.

This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925 Statement.[7]

Appellant raises the following issues on appeal:

A. Did [the] trial court err by concluding, as a matter of law, [that] the contents of the article are not defamatory and granted [Appellees' Motion for] Summary Judgment?

B. Did [the] trial court err by concluding, as a matter of law, [that Appellees] are protected by the fair reporting privilege?

C. Did [the] trial court err by concluding, as a matter of law, [that] Appellant is not able to avail himself of [the] discovery rule because he did not exercise reasonable diligence?

D. Was Appellant entitled to the same application, regard, and consideration, pursuant to the Equal Protection Clause of the United States, as *pro se* litigants held in ***Commonwealth v. Small***, 278 A.2d 1276 (Pa. 2020), that determined *pro se* litigants' access to public information is distinctly compromised and does not have access to information otherwise readily available to the public, and indeed, is no longer a member of the public?

E. Did [Appellees] establish their burden of proving the privileged character of the occasion on which the article was published?

Appellant's Brief at ii (reordered for ease of disposition, some capitalization omitted).

**A.**

Appellant challenges the trial court's Order granting summary judgment in favor of Appellees. Our Supreme Court has clarified our role as the appellate court as follows:

---

[7] On March 2, 2023, the trial court filed a Rule 1925(a) Opinion in which it directed this Court to its December 12, 2022 Opinion addressing the reasons for its ruling.

- 4 -

> [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But[,] the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted); *see also* Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the nonmoving party." *Summers*, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (citation and internal quotation marks omitted).

"[O]ur responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." *Jones v. Levin*, 940 A.2d 451, 453 (Pa. Super. 2007). If the record contains "evidence that would

allow a fact-finder to render a verdict in favor of the non-moving party," we must reverse the order granting summary judgment. *Id.* at 453-54. Because our "inquiry involves solely questions of law, our review is *de novo*." *Id.* at 453 (citation omitted).

**B.**

In his first issue, Appellant asserts that the trial court erred in finding that his Defamation claim failed as a matter of law because the article was not defamatory. Appellant's Brief at 14-20.

The July 12, 2007 article states as follows:

**Shooting suspect nabbed in W-B: Man wanted in Philadelphia death is discovered in area motel during a rape investigation.**

Wilkes-Barre - Police investigating a reported rape at a Kidder Street motel on Tuesday ended up capturing a man connected to a deadly shooting in Philadelphia and discovering more than 100 packaged bags of heroin and crack cocaine inside the motel room.

Armel Baxter, 22, of Philadelphia, was identified by a Live Scan fingerprint analysis that showed he was wanted by Philadelphia police for shooting a man back on April 22.

Sgt. Joseph Novak said Baxter was expected to be picked up by Philadelphia authorities on Wednesday.

Details about the deadly shooting couldn't be obtained from Philadelphia police.

According to local police:

Officers John Majikes and Charles Casey responded to the Garden Inn on Kidder Street just before 6 a.m. on Tuesday for a reported rape.

An investigation determined that the man, identified as Baxter, was involved in a dispute with a woman.

- 6 -

Police said packaged bags of heroin and crack were found inside Baxter's motel room.

Baxter refused to give police any identification then gave police fake names.

Police took Baxter to the Kingston Police Department, where a Live Scan fingerprint analysis showed his true name and arrest warrant for the homicide in Philadelphia.

Baxter is the fourth person since January who was wanted for homicide in other areas and was captured here. . . .

Edward Lewis, *Shooting Suspect Nabbed in W-B*, Times Leader, July 12, 2007, https://www.timesleader.com/archive/1117771/shooting-suspect-nabbed-in-w-b.

In an action for defamation, the plaintiff bears the burden of proving numerous elements, including, relevantly, the defamatory nature of the communication. 42 Pa.C.S. § 8343(a). "A statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from dealing with him." ***Kryeski v. Schott Glass Tech., Inc.***, 626 A.2d 595, 600-01 (Pa. Super. 1993) (citation omitted). "Whether the challenged statements are capable of having a defamatory meaning is a question of law for the court to determine in the first instance." ***Id.***

In ***Weber v. Lancaster Newspapers, Inc., et al.***, 878 A.2d 63 (Pa. Super. 2005), this Court explained the test used to determine whether a communication has "defamatory character:"

In an action for defamation, the plaintiff has the burden of proving ... the defamatory character of the communication. It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a

- 7 -

defamatory meaning, there is no basis for the matter to proceed to trial.

To determine whether a statement is capable of a defamatory meaning, we consider whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him. Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule. The court must view the statements in context.

Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. **Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce**, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.

It is not enough that the victim of the statements ... be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society.

**Weber**, 878 A.2d at 78, quoting **Tucker v. Phila. Daily News**, 848 A.2d 113, 123–124 (Pa. 2004) (internal citations and quotation marks omitted, emphasis added).

In support of his claim, Appellant argues that the trial court evaluated the facts under the wrong standard when it concluded that the article was not defamatory because "the article does not state [Appellant] is a rapist or committed rape." Appellant's Brief at 14 (citing Trial Ct. Op., 12/12/22, at 23). He contends that "what the article does not state is immaterial to the determination of the court as a matter of law. What is of merit, is what the article does state and the impression it would naturally engender in the minds

of the average person[,]" *i.e.*, that Appellant had been reported for and police were investigating him for raping someone. ***Id.*** at 15-17.

Here, after considering the full context of the article, the trial court concluded that it was not capable of a defamatory meaning as a matter of law. Following our *de novo* review, we agree. Our review of the article indicates that it never states that Appellant raped anyone or even that he was being investigated for raping someone. Rather, the article indicates that police responded to a motel to investigate a rape allegation. Upon arrival, police found Appellant, who had had a dispute with a woman, in a room that contained 100 bags of heroin and crack cocaine. When Appellant failed to identify himself to the police officers, they took him to the police station where they discovered that he was a suspect in a Philadelphia murder investigation. The obvious conclusion after reading the article is that Appellant was involved in a shooting in Philadelphia, not that he was involved in a rape at the motel.

Because the article was not capable of a defamatory meaning as a matter of law, the trial court did not err in concluding that Appellant did not plead a *prima facie* cause of action for Defamation, such that there is no issue to be decided by the fact-finder. Accordingly, the trial court properly granted summary judgment in favor of Appellees.[8]

Order affirmed.

_____

[8] In light of our disposition of Appellant's first claim, we need not address his remaining issues.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/09/2023