508 A.2d 1200

**Arthur H. HENZE, Executor of the Estate of Virginia M. Henze, Deceased, and Arthur H. Henze, in his own right**

v.

**TEXACO, INC., a corporation, David Rice, t/d/b/a Rice's Texaco, and Leo and Rose Pancari.**

**Appeal of TEXACO, INC., a corporation.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed April 3, 1986.

Reargument Denied May 28, 1986.

Richard L. McMillan, Pittsburgh, for appellant.

Michael Louik, Pittsburgh, for Authur H. Henze, executor and in his own right, appellee.

David L. Beck, Pittsburgh, for Rice, appellee.

Scott Millhouse, Pittsburgh, for Pancari, appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge:

Virgina Henze fell when she tripped over a threshold which had become loose in the doorway to the office of a Texaco service station operated by David Rice. The service station was owned by Leo and Rose Pancari, but the same had been leased to Texaco, Inc. and sublet to David Rice, t/a Rice's Texaco. In an action to recover damages for personal injuries, Henze alleged that the threshold had been negligently maintained. A jury apportioned negligence as follows: Mrs. Henze—35%; Texaco, Inc.—52%; David Rice—13%.[1] Texaco's motions for judgment n.o.v. and for a new trial were overruled, and judgment was entered on the verdict.[2] Texaco appealed.

On appeal, Texaco contends (1) that it is entitled to a judgment n.o.v.; (2) that the trial court erroneously instructed the jury regarding the liability of a "landlord out of possession"; and (3) that the trial court erred in dismissing Texaco's claim for indemnity against Rice. We con-

[1]. The jury found that Leo and Rose Pancari had not been negligent.

[2]. Virginia Henze subsequently died, and her executor was substituted as a party.

clude that the evidence was insufficient to support a finding that Texaco was negligent.[3]

On July 2, 1980, Mrs. Henze entered the office at Rice's Texaco Station for the purpose of making an appointment to have her car inspected. As she was leaving the office, she stepped on a loose threshold in the doorway, which caused her to lose her balance and fall. The service station had been leased to and was operated by Rice continuously after 1970. The lease in existence at the time of the accident contained a clause which required Rice to maintain the service station "in good repair and in good, clean, safe and healthful condition." The lease provided further that if Rice failed to make the necessary repairs, Texaco could make the repairs and charge them to Rice's account. Throughout the course of Rice's tenancy, both parties made repairs in and around the station. Although Rice generally notified Texaco whenever major repairs became necessary, Texaco also sent a representative twice a month to inspect the station. On one occasion, Texaco had installed a kickplate on the door to the office. Other minor repairs, however, had been made by Rice. Significantly for our purposes, on two or three occasions prior to Mrs. Henze's fall, Rice had discovered the looseness of the threshold and had repaired it by tightening the screws that held it in place. At no time did Rice request that Texaco make repairs to the threshold or notify Texaco that the threshold had a propensity for becoming loose. The propensity of the threshold to become loose, moreover, could not be detected by a visual inspection. The evidence did not disclose that Texaco had any knowledge or reason to know that on occasion the threshold had become loose.

On a motion for judgment n.o.v., the facts must be considered in the light most favorable to the party against whom the motion is made. *Maravich v. Aetna Life and Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898

3. Although our decision of the first issue suggests the absence of any need to decide the correctness of the trial court's jury instructions, our review reveals inaccurate and inadequate instructions which necessarily contributed to an improper verdict.

(1986); *Kearns v. Clark,* 343 Pa.Super. 30, 34, 493 A.2d 1358, 1360 (1985); 10 Std.Pa.Prac.2d § 64:14 (1982). If, however, the law permits no recovery upon the facts which have been alleged and which the jury may justifiably have found, a judgment n.o.v. is properly granted. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 589, 375 A.2d 1267, 1273 (1977); *Timbrook v. Foremost Insurance Co.,* 324 Pa.Super. 384, 387, 471 A.2d 891, 893 (1984); 10 Std.Pa.Prac.2d § 64:5 (1982).

■ A landlord out of possession is generally not responsible for injuries suffered by a business invitee on the leased premises. *Dinio v. Goshorn,* 437 Pa. 224, 228–229, 270 A.2d 203, 206 (1969); *Bouy v. Fidelity-Philadelphia Trust Co.,* 338 Pa. 5, 7, 12 A.2d 7, 8 (1940); *Pierce v. Philadelphia Housing Authority,* 337 Pa.Super. 254, 257, 486 A.2d 1004, 1005 (1985); 22 P.L.E. *Landlord and Tenant* § 257 (1959). See: *Prosser and Keeton on Torts* § 63 (5th ed. 1984); Restatement (Second) of Torts § 356 (1965). This rule is subject to several exceptions. A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises, see: *Smith v. M.P.W. Realty Co.,* 423 Pa. 536, 539, 225 A.2d 227, 229 (1967); *Pierce v. Philadelphia Housing Authority, supra;* (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se, see: *Miller v. Atlantic Refining Co.,* 12 D. & C.2d 713, 719 (1957), *aff'd,* 393 Pa. 466, 143 A.2d 380, 383 (1958); (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee, see: *id.;* (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee, see: *Yarkosky v. The Caldwell Store, Inc.,* 189 Pa.Super. 475, 481, 151 A.2d 839, 842 (1959); (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs, see:

*Coradi v. Sterling Oil Co.*, 378 Pa. 68, 71, 105 A.2d 98, 99 (1954); or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises, see: *Goodman v. Corn Exchange National Bank and Trust Co.*, 331 Pa. 587, 590, 200 A. 642, 643 (1938). See generally: 22 P.L.E. *Landlord and Tenant* §§ 257–260; *Prosser and Keeton on Torts* § 63 (5th ed. 1984); Restatement (Second) of Torts §§ 356–362 (1965).

It is clear in the instant case that Texaco was physically out of possession of the service station. The station was occupied exclusively by Rice and operated independently by Rice and his employees. The trial court, however, believed that Texaco had exercised control over the station because it had made repairs from time to time. The court concluded, therefore, that the jury's verdict could be made to rest upon a finding that Texaco was in possession of the service station and should have discovered and repaired the loose threshold. We are constrained to disagree. "Reservation by a lessor of the right to enter upon the leased premises for various purposes and to make repairs and alterations, if he should elect to do so, implies no reservation of control over the premises which will render him chargeable with their maintenance and repair. Moreover, the fact that the landlord makes repairs does not impose [on him either a duty] to keep the demised premises in repair, or liability for damages for injuries caused by a failure to keep the premises in repair." 49 Am.Jur.2d *Landlord and Tenant* § 775 (1970). See: *Moore v. Weber*, 71 Pa. 429, 431–432 (1872); 51C C.J.S. *Landlord and Tenant* § 366(1) (1968). In the instant case, therefore, the mere fact that Texaco occasionally made repairs to the service station did not subject it to liability as a lessor in possession.

Texaco's activities, moreover, did not bring it within any of the exceptions to the rule limiting the liability of a landlord out of possession. The first exception holds the lessor liable if he reserves control over the offending portions of the demised premises. Here, Texaco did not re-

serve control over the office or the entrance thereto. The second exception was also inapplicable, there being no evidence that the threshold to the office was a nuisance or that it was inherently dangerous. Similarly, there was no evidence that the threshold to the office had been defective at the time when the service station was leased to Rice or, indeed, that the threshold had at that time a propensity for being loosened by use. There also was no evidence that Texaco should have anticipated that the threshold would become loose during the term of the lease. Moreover and in any event, the evidence was unambiguous that it had been Rice who, in fact, had discovered and repaired the looseness of the threshold whenever it occurred. Thus, the third exception does not apply. For similar reasons, Texaco did not fall within the ambit of the fourth exception, which imposes liability upon a lessor who leases property for a public purpose without inspecting and repairing the property *before possession is transferred.* See: *Prosser and Keeton on Torts* § 63, at 439 (5th ed. 1984). The fifth exception, which holds a lessor liable for negligently repairing the demised premises, is also inapplicable, because Texaco had never been called upon to make repairs to the threshold.

The inapplicability of the sixth and final exception, which imposes liability upon a lessor who fails to make repairs after being afforded notice and a reasonable opportunity to do so, requires a more extended review and explanation. A lessor out of possession, as we have observed, is generally under no duty to repair the demised premises. *Levine v. McClenathan,* 246 Pa. 374, 376, 92 A. 317, 318 (1914); *Johnstown Millwork and Lumber Co. v. Varner,* 117 Pa. Super. 374, 378, 177 A. 325, 326 (1934). If the lessor has agreed to make repairs, however, he is entitled to timely notice and a reasonable opportunity to remedy any dangerous condition which arises on the premises. *Goodman v. Corn Exchange National Bank and Trust Co., supra.* Notice may be constructive as well as actual. *Smith v. M.P.W. Realty Co., supra* 423 Pa. at 539–540, 225 A.2d at

229. See: *Dinio v. Goshorn, supra* 437 Pa. at 228–229, 270 A.2d at 206. See also: 51C C.J.S. *Landlord and Tenant* § 371 (1968). Whether a lessor will be charged with constructive notice of a dangerous condition depends upon how frequently he has inspected the leased premises, and for how long the unsafe condition has existed. See: *Miller v. Atlantic Refining Co., supra; Smith v. M.P.W. Realty Co., supra.* See generally: 49 Am.Jur.2d *Landlord and Tenant* § 815 (1970). Absent notice and an opportunity to make the repairs, a lessor is not liable to an invitee injured on the premises.

In *Miller v. Atlantic Refining Co., supra,* the plaintiff slipped and fell after stepping in motor oil which had been allowed to cover the sidewalk adjacent to a service station. An action was brought against both the owner and lessee of the station for negligent maintenance of the sidewalk. A jury failed to agree upon a verdict. The owner then filed a motion for judgment on the whole record. This was granted by the trial court. On appeal to the Supreme Court, the issue was whether plaintiff's evidence was sufficient to support a finding that the owner was liable for the dangerous condition of the sidewalk. Under the terms of the lease, the lessee had been made responsible for keeping the sidewalk clean and clear of obstructions. The evidence disclosed also that the lessee had in fact cleaned the sidewalk regularly. Nevertheless, because of the nature of the service station's business, the oil and grease had continually reappeared. It was also established that although the owner had periodically inspected the station, it was unaware of the dangerous condition which existed on the sidewalk. In the opinion of the trial court, which the Supreme Court approved, the law was explained as follows:

> With a recurring and removable potentially dangerous condition such as we are here considering, a landlord out of possession would be faced with an intolerable burden were he to be charged with notice and the responsibility of removal; he would have to station an employee on the premises for the sole purpose of protecting him from this

contingency. We know of no Pennsylvania case that imposes such a burden on a landlord out of possession. 12 D. & C.2d at 722, *aff'd*, 393 Pa. 466, 143 A.2d 380, 385. In affirming, the Supreme Court agreed with the conclusion of the trial court that "[o]n the basis of the record before us there is nothing on which the jury could base a finding that defendant [the owner of the station] had, or should have had notice of the presence of the oil at the time of plaintiff's fall." *Id.*

The Supreme Court of Oregon in *McWilliam v. Phillips Petroleum, Inc.*, 269 Or. 526, 525 P.2d 1011 (1974), sustained the entry of an involuntary nonsuit under facts which are strikingly similar to those in the instant case. There, the plaintiff had been injured when a broken transom window in the restroom of a service station owned by Phillips Petroleum, Inc. and leased to Leland Prather had fallen and had struck the plaintiff. Although the lease between Phillips and Prather required Prather to maintain and repair the station, the parties had followed a practice whereby Phillips made major repairs and Prather made various minor repairs. The procedure followed by the parties had been for Prather to notify Phillips when repairs were needed. Phillips also sent a sales representative who inspected Prather's station every month or two. The transom window was not readily visible by a person standing below, and neither Prather nor Phillips was aware that the window had been broken. The Court observed that "[a]s a general rule, in the absence of a special agreement to make repairs, a landlord is under no duty to do so. However, he may, under the terms of the lease, covenant to make repairs, but he must have timely notice of the need for repairs before he is obliged to make them." *Id.* at 528, 525 P.2d at 1012. The Court concluded that because Phillips had not had notice of the broken window, it could not be held liable to an invitee of the service station. *Id.* at 529, 525 P.2d at 1013.

In the instant case, the threshold which caused Mrs. Henze's fall had been maintained and repaired solely by

Rice throughout the term of the lease. Despite Rice's efforts to secure the threshold, it became loose on several occasions. As in *Miller*, the condition was one which "would happen, be corrected, and happen again." *Miller v. Atlantic Refining Co., supra* at 722, *aff'd*, 393 Pa. 466, 143 A.2d 380, 384. Texaco had received no notice that the threshold was susceptible to loosening, and the propensity for becoming loose was not one that would have been detected during Texaco's bimonthly, visual inspections of the service station. Absent either actual or constructive notice of a loose threshold, however, Texaco could have no liability as a landlord out of possession for injuries sustained by Mrs. Henze when she tripped over the loose threshold.

The record in this case is clear that there was no reason for Texaco to know of the condition of the threshold which caused Mrs. Henze to fall. Therefore, Texaco was not liable for her injuries. Texaco's motion for judgment n.o.v. should have been granted. The failure to keep the threshold in repair under the facts of this case was a violation of a duty owed by the tenant.

We are now faced with an issue of first impression in Pennsylvania. Having determined that Texaco should have been awarded a judgment n.o.v., what is the effect of the judgment n.o.v. upon the jury's findings that Mrs. Henze's causative negligence was 35% and David Rice's negligence was 13%? An answer can be found in the decisions of the Supreme Court of Wisconsin, where the Court recognized that any attempt by a court to reapportion the negligence found by the jury would be speculative and, therefore, improper. The better practice, the Wisconsin court held, is to order a new trial with respect to the other parties. See: *Chart v. General Motors Corp.*, 80 Wisc.2d 91, 112, 258 N.W.2d 680, 689 (1978); *Nelson v. L. & J. Press Corp.*, 65 Wisc.2d 770, 783, 223 N.W.2d 607, 614 (1974). We are constrained to agree that an attempt by a court to reapportion negligence in this case would be speculative. The issue of damages, however, has been fairly tried. Indeed, none

of the parties have suggested error with respect to the trial of the damage issue. Similarly, there is no need to re-try the jury's finding that Leo and Rose Pancari were not negligent. The only issue requiring a retrial is the apportionment of the negligence of Virginia Henze and David Rice.

Judgment reversed and cause remanded with directions to enter judgment n.o.v. in favor of Texaco, Inc. and for a new trial on the issue of the causative negligence of Virginia Henze and David Rice.