J-S37002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAMONT AND BARBARA HAILEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOAN BARIBAULT AND SCOTT | : | |
| BARIBAULT, INDIVIDUALLY AND AS | : | |
| TRUSTEE FOR THE BARIKOE FAMILY | : | No. 412 EDA 2020 |
| TRUST AND BANCROFT | : | |
| NEUROHEALTH | : | |
| | : | |
| | : | |
| APPEAL OF: JOAN BARIBAULT AND | : | |
| SCOTT BARIBAULT, INDIVIDUALLY | : | |
| AND AS TRUSTEE FOR THE BARIKOE | : | |
| FAMILY TRUST | : | |

Appeal from the Order Entered June 4, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2014-21090

BEFORE:  SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    Filed: December 30, 2020

Appellants, Joan Baribault and Scott Baribault, individually and as Trustee for the Barikoe Family Trust (collectively "the Baribaults"), appeal from the June 4, 2018 order granting summary judgment in favor of Appellee, Bancroft Neurohealth ("Bancroft"), and denying the Baribaults' motion for summary judgment.  After review, we affirm.

The trial court summarized the relevant facts and procedural history in this matter as follows:

On July 21, 2014, Plaintiffs[,] Lamont Hailey and Barbara Hailey [(collectively "the Haileys"),] filed a complaint against [the

Baribaults] asserting claims of negligence and loss of consortium …. *See* Docket Entry 0. [The Haileys] asserted no claims against [Bancroft] in their complaint. *Id.* [The Haileys'] claims arose from personal injuries sustained by Mr. Hailey from a "slip, trip, stumble, and/or fall" while walking down steps at the property located at 45 South Merion Avenue, Bryn Mawr, Pennsylvania (hereinafter "the Subject Property"). Compl. § 7. At the time of the incident, Mr. Hailey was an employee of [Bancroft]. Docket Entry 87 at Ex. B, 44:8-11.[1]

On October 3, 2014, [the Baribaults] filed an Answer with New Matter and a Joinder Complaint against [Bancroft]. *See* Docket Entries 5-6. On March 3, 2015, after several rounds of preliminary objections to the joinder complaint, [the Baribaults] filed an Amended Joinder Complaint against [Bancroft], in which they alleged negligence and breach of contract against [Bancroft], seeking contribution and indemnification. *See* Docket Entry 24. On July 22, 2015, [Bancroft] filed an Answer with New Matter to [the Baribaults'] Amended Joinder Complaint, denying liability on the claims in the Joinder Complaint. *See* Docket Entry 34.

In [the Baribaults'] Amended Joinder Complaint against [Bancroft], they base their claims for contribution and indemnification on a lease between [the Baribaults] and [Bancroft] ("the Lease"), which provides in pertinent part the following indemnification provision entitled "Indemnification of Owner":

> [Bancroft] will indemnify and save harmless [the Baribaults] against and from any and all liability arising during the Term or injury during said Term to person or property arising within those portions of the Premises **within the exclusive**

---

[1] At the time of the accident, Lamont Hailey was employed by Bancroft, and Bancroft was a tenant in the Subject Property that was owned by the Baribaults. The Haileys' Complaint, 7/24/14, at ¶¶ 1-7; The Baribaults' Answer and New Matter, 10/3/14, at ¶¶ 3-5; The Baribaults' Complaint Against Additional Defendants, 10/3/14, at ¶¶ 1-10; The Baribaults' Amended Joinder Complaint, 3/3/15, at ¶¶ 1-12; and Bancroft's Opposition to the Baribaults' Petition for Joinder, 3/18/15, at ¶¶ 1-14. On appeal, the Baribaults do not dispute these roles, and in fact label themselves as the Landlord, Bancroft as their Tenant, and Mr. Hailey as an employee of Bancroft. The Baribaults' Brief at 7-8.

control of [**Bancroft**] or occasioned by any act or omission of [Bancroft], or of any agent, employee, resident, invitee or family member of [Bancroft] **unless such injury results from [the Baribaults'] negligence or [the Baribaults'] breach of this Lease**. [The Baribaults] shall not be liable for any loss of any property of theft, otherwise, nor for injury or death of persons or damage to property caused by other persons, or resulting from the escape of steam, gas, electricity or water, or from rain, snow or dampness or presence of hazardous materials except to the extent otherwise provided by law.

*See* Am. Joinder Compl. at Ex. D, § 13 (emphasis added).

In addition, the Lease provides the following on "Tenant Liability":

[Bancroft agrees] that with respect to those portions of the Premise within the exclusive control of [Bancroft], [the Baribaults] shall not be responsible or liable for any loss or damage to any goods or chattels placed on, in or about the Premises, not for any personal injury to [Bancroft] or any agent, resident employee, invitee or family member of [Bancroft] **unless such loss, damage or injury results from [the Baribaults'] negligence**. [The Baribaults] shall not be deemed a bailee as to any goods or chattels placed on, in or about the Premises. IT IS THE RESPONSIBILITY OF [BANCROFT] TO MAINTAIN ADEQUATE GENERAL LIABILITY INSURANCE AND ADEQUATE WORK[ERS'] COMPENSATION INSURANCE ON THE PREMISES AND ITS EMPLOYEES. Copy of said policy shall be given to [the Baribaults] prior to occupancy.

*Id.* at Ex. D, § 12 (emphasis added).

On the topic of "Maintenance and Repairs," the Lease provides in pertinent part:

8-a. [The Baribaults] shall maintain and keep in good repair, structural components, water main, and exterior walls of the Premises. Additionally, [the Baribaults] agrees to repair or, if necessary, replace the following; furnace, hot water heater, air conditioning unit, plumbing pipes, electrical wiring and roof...[.]

8-b. [Bancroft] shall be obligated to make all repairs and replacements to the Premises...[U]pon the failure of [Bancroft] to make any repair, [**the Baribaults**]**, at** [**the Baribaults**] **discretion, may make such repairs** and the cost of such repair shall be added to and deemed a part of the rent and shall be payable by [Bancroft] to [the Baribaults] on demand...[.]

8-c. [Bancroft] shall be responsible for maintenance of the entire premise, with the exception of those items stated in Paragraph 8-a, which [the Baribaults] covenants to perform. And, **Owner agrees to repair interior and exterior of premises every three years**...

*Id.* at Ex. D, § 8(a)-(c) (emphasis added).

While the Lease was originally between [the Baribaults] and a different tenant, a lease addendum signed on November 18, 2009 by [Bancroft's] President/CEO changed the tenant to [Bancroft]. *See* Docket Entry 87 at Ex. F. The Lease Renewal between [the Baribaults] and [Bancroft] provided that "All conditions of the prevailing lease agreement shall continue except for the following changes, which the tenants agree to" and added the following term:

Tenant is in sole possession and control of the premises and is responsible for notifying Landlord of any required repair; Landlord has not [sic] duty to inspect for repairs. Tenant shall indemnify and save Owner harmless for any and all liability, loss, costs, damages, personal injury, damages to any goods or expenses arising out of any acts, violations, non-performance by the Tenant of any of the covenants contained herein, or any other acts or omissions of Tenant or its agent employees, invitees, residents or others.

*Id.*

On April 10, 2018, [the Baribaults] filed a Motion for Summary Judgment, while [Bancroft] filed its own Motion for Summary Judgment on April 20, 2018. *See* Docket Entries 87; 91. [The Baribaults] filed a response in opposition to [Bancroft's] Motion for Summary Judgment, to which [Bancroft] filed a reply and [the Baribaults] filed a sur-reply. *See* Docket Entries 93; 95; 97. [The Haileys] and [Bancroft] filed responses in opposition to

[the Baribaults'] Motion for Summary Judgment, to which [the Baribaults] filed a sur-reply to [Bancroft's] response. *See* Docket Entries 92; 94; 96. On June 1, 2018, upon consideration of these motions, their responses, and sur-replies, this [c]ourt denied [the Baribaults'] Motion for Summary Judgment and granted [Bancroft's] Motion for Summary Judgment, dismissing with prejudice all claims against [Bancroft] and dismissing [Bancroft] as a party to the action. *See* Docket Entry 98.

[The Baribaults] filed a Motion for Reconsideration on June 11, 2018, requesting that this [c]ourt vacate its grant of [Bancroft's] Motion for Summary Judgment, or in the alternative, grant Certification of this [c]ourt's Order of June 1, 2018 for an Immediate Interlocutory Appeal pursuant to 42 Pa. C.S.A. [§] 702(b). *See* Docket Entry 99. This Court denied [the Baribaults'] Motion for Reconsideration and Alternative Motion for Certification in an Order dated June 13, 2018. *See* Docket Entry 100. This [c]ourt's Order of June 1, 2018 was made final by the Notice of Settlement and Release entered on December 17, 2019, which settled the remaining claims between [the Baribaults] and [the Haileys]. *See* Docket Entries 102; 104. [The Baribaults] filed a timely Notice of Appeal on December 19, 2019.

Trial Court Opinion, 3/2/20, at 1-5 (emphases in original).  Both the trial court

and the Baribaults complied with Pa.R.A.P. 1925.

On appeal, the Baribaults present the following issue:

Did the trial court commit an error of law in granting summary judgment in favor of Bancroft where Bancroft was required to indemnify the Baribaults for injuries to Bancroft's employees caused by Bancroft's negligence pursuant to the terms of the Lease?

The Baribaults' Brief at 4.  After review, we conclude that Bancroft was not

required to indemnify the Baribaults, and the Baribaults were precluded from

enjoining Bancroft as an additional defendant as a matter of law.

Our scope and standard of review over a trial court's order granting a motion for summary judgment are as follows:

> Our scope of review … is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (citation omitted).

The Baribaults contend that the plain language of the Lease requires Bancroft to indemnify the Baribaults for the injuries Mr. Hailey sustained. The Baribaults' Brief at 14. As stated, the injured party, Mr. Hailey, was employed by Bancroft. After Mr. Hailey filed a complaint against the Baribaults, the Baribaults sought to join Bancroft as an additional defendant. The trial court concluded that the Baribaults were precluded from joining Bancroft as an additional defendant pursuant to the Workers' Compensation Act.[2] Trial Court Opinion, 3/2/20, at 7. We agree.

---

[2] Act of June 2, 1915, P.L. 736, No. 338, as amended, 77 P.S. §§ 1-1041.4, 2501-2710.

"Worker[s'] Compensation can best be understood as a replacement of common law tort actions between employees and employers as a means for obtaining compensation for injuries." ***Markle v. Workmen's Comp. Appeal Bd. (Caterpillar Tractor Company)***, 661 A.2d 1355, 1357 (Pa. 1995). The relevant portion of the Workers' Compensation Act provides as follows:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes,[1] his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2)[2] or occupational disease as defined in section 108.[3]
>
> > [1] [Spelling] in original.
> >
> > [2] 77 P.S. § 411(1), (2).
> >
> > [3] 77 P.S. § 27.1.
>
> (b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481 (footnotes in original).

The trial court provided a thorough discussion of the relevant facts and examination of the pertinent legal authority, and it explained as follows:

"This section 77 [P.S.] § 481(b), it has been said, manifested a broad legislative intent to bar the joinder of an employer as an additional defendant." *Heckendorn v. Consol. Rail Corp.*, 439 A.2d 674, 675 (Pa. Super. Ct. 1981), *aff'd*, 465 A.2d 609 (Pa. 1983) (citation omitted). "[Section] 481(b) has 'obliterated' the common law cause of action against the employer and foreclosed the adjudication of liability on the part of the employer...[.] It has created an exception to the general right of contribution among tortfeasors." *Id.* "Thus a defendant whose negligence is alleged to be responsible for an injury suffered by an employee protected by the Work[ers'] Compensation Act, **may not, in the suit brought against him, join the employer as an additional defendant**." *Id.* (emphasis added) ….

"In order for an employer to be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee there must be an **express** provision for this contingency in the indemnification clause." *Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 308 (Pa. Super. Ct. 1993) (emphasis added). "In order to avoid the ambiguities which grow out of the use of general language, contracting parties must **specifically** use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own negligence which result in harm to the employees of the named employer." *Id*. at 308-309 (emphasis added); *see also Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 43 (Pa. Super. Ct. 1997) (citing *Ruzzi v. Butler Petroleum Company*, 527 Pa. 1, 588 A.2d 1 (1991)) (requiring intent to indemnify against the negligence of the indemnitee be expressed in "unequivocal terms");[3] *Greer v. City of Philadelphia*, 795 A.2d 376, 380 (Pa.

---

[3] **Ruzzi** reaffirmed the holding from **Perry v. Payne**, 66 A. 553 (Pa. 1907) explaining the specificity with which an agreement to indemnify must be expressed in a contract. In **Perry**, our Supreme Court held:

[A] contract of indemnity ... should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation.

- 8 -

2002) (rejecting adoption of contractual interpretation that requires indemnitor to indemnify the indemnitee's negligence unless the contract language is "clear and unambiguous" such that the "contract puts it beyond doubt"). "Case law has established that the indemnity provision in the Work[ers'] Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient." *Bester*, 619 A.2d at 307 (quoting *Pittsburgh Steel Co. v. Patterson—Emerson—Comstock, Inc.*, 171 A.2d 185 (Pa. 1961)).

Here, [the Baribaults] failed to prove that the Lease contained language sufficient to overcome the immunity afforded by the Workers' Compensation Act—requiring this [c]ourt to reject [the Baribaults'] contractual claim for contribution and indemnification. While the Lease Renewal and Sections 12 and 13 of the Lease address indemnification of [the Baribaults] by [Bancroft], the indemnification language is extremely broad, indemnifying for "any personal injury" and "any and all liability." *See* Am. Joinder Compl. at Ex. D, ¶¶ 12-13; Docket Entry 87 at Ex. F. Under *Bester*, such general phrases are insufficient to hold an employer liable in indemnification for injuries to its own employees caused by negligence of the indemnitee.

Even if the indemnification language was more specific, the standard set forth in *Bester* requires that there be an express provision demonstrating the employer agrees to indemnify the third party for its own acts of negligence. In this case, not only does the Lease lack an express provision indemnifying [the Baribaults] for their own negligence, but the Lease actually contains an express provision saying just the opposite. Sections 12 and 13 of the Lease *expressly* state that the obligation to indemnify [the Baribaults] does not extend to circumstances where injuries of employees result from [the Baribaults'] own negligence or breach. *See* Am. Joinder Compl. at Ex. D, ¶ 12 ("[The Baribaults] shall not be responsible or liable for...any personal injury...**unless such loss, damage, or injury results**

_____

**Perry**, 66 A. at 557. The requirement that an agreement to indemnify should not be construed to indemnify against the negligence of the indemnitee unless the agreement is specific and expressed in unequivocal terms has been termed the "**Perry/Ruzzi** rule." ***Integrated Project Services v. HMS Interiors, Inc.***, 931 A.2d 724, 736 (Pa. Super. 2007).

**from** [**the Baribaults'**] **negligence**.") and ¶ 13 ("[Bancroft] will indemnify and save harmless [the Baribaults] against and from any and all liability arising from the...injury...**unless such injury results from** [**the Baribaults'**] **negligence or** [**the Baribaults'**] **breach of this Lease**."). Notably, [the Haileys'] claims for which [the Baribaults] seek contribution and indemnification are brought *solely* against [the Baribaults] for their own negligent acts. Because the Lease carves out exceptions in which [Bancroft] expressly states it does not agree to indemnify [the Baribaults] for their own negligence, this alone bars [the Baribaults'] claim for indemnification and contribution.

Nevertheless—in spite of the plain language to the contrary—-[the Baribaults] maintain that the Lease expressly provides them with the right to indemnification. In support of this position, [the Baribaults] direct this [c]ourt's attention to Section 13 of the Lease, which indemnifies [the Baribaults] where injuries take place in a location "within the exclusive control of [Bancroft]." [The Baribaults] make the case that several provisions of the [L]ease, when read together, establish that [Bancroft] unquestionably controlled the entire Subject Property. For example, Section 8 of the Lease provides that [Bancroft] shall be responsible for maintenance "of the entire premise" and obligated to perform repair to "the Premises" generally. Similarly, Section 9 of the Lease states [the Baribaults] must give twenty-four hour notice before entering the Premises, while the Lease Renewal term speaks to [Bancroft] having "sole possession and control of the premises." In emphasizing this select language, [the Baribaults] argue that Section 13 does expressly indemnify [the Baribaults] because the parties' intent and the Lease as a whole make [Bancroft] control over the Property so sweeping as to obviate the import of the line excluding [the Baribaults] own acts from indemnification.

In support of their position that the Lease must be interpreted to require indemnification, [the Baribaults] heavily cite *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 42 (Pa. Super. Ct. 1997). "In construing a contract, each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Id.* (quoting *Village Beer & Beverage, Inc. v. Vernon D. Cox, Inc.*, 475 A.2d 117, 121 (Pa. Super. Ct. 1984)). "The intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most

reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id*.

For all of [the Baribaults'] effort to convince this [c]ourt that *Bethlehem* necessitates reading the parties' Lease to require indemnification, this [c]ourt remains unpersuaded. The critical flaw in [the Baribaults'] argument is that in their insistence that this [c]ourt discern the "intent" of the parties and look to the Lease as a whole, they also ask this [c]ourt to completely ignore the express language of the Lease excluding [the Baribaults'] own negligent acts from indemnification. [The Baribaults'] argument, in effect, would have this [c]ourt read the indemnification provision up until where the Lease states that [Bancroft] "will indemnify and save harmless" [the Baribaults], but then stop reading before the key limiting text a few lines further, which says "unless such injury results from [the Baribaults'] negligence or [the Baribaults] breach of this Lease."

Further, the [c]ourt finds that [the Baribaults'] attempts to parallelize *Bethlehem* with this case fail, given crucial differences in the indemnification language at issue. Unlike this case, the indemnity provision in *Bethlehem* contained language expressing in unequivocal terms the intent for a third party to be indemnified "**whether negligent or otherwise**." *Bethlehem*, 703 A.2d at 42 (emphasis added). In *Bethlehem*, the court grappled with the fact that one paragraph of a contract contained express language indemnifying a third party for its own negligence, while the preceding paragraph was silent as to this issue. *Bethlehem* ultimately held that despite one paragraph not containing language expressing a clear intent to indemnify third parties for their own negligence, a different paragraph's inclusion of such express language showed a clear intent to indemnify these third parties when reading the contract as a whole. Here, the parties could have included explicit language agreeing to indemnify [the Baribaults] for their own acts of negligence or stayed silent on this matter but instead chose to include express language barring indemnification for [the Baribaults'] own negligence, unlike in *Bethlehem*.

Even when considering the Lease as a whole per *Bethlehem*, it is unclear that the parties' intent would have been to give no effect to the language barring indemnification for [the Baribaults'] own negligent acts. Contrary to [the Baribaults'] assertions, this [c]ourt finds that the Lease as a whole does not establish that the

- 11 -

location of [Mr. Hailey's] injury was under the "exclusive control" of [Bancroft]. While many provisions speak to [Bancroft] being generally responsible for the Subject Property, others carve out exceptions suggesting non-exclusivity of control. For instance, Section 8 provides "[the Baribaults], at [the Baribaults'] discretion, may make such repairs" and "[the Baribaults] agree to repair interior and exterior of premises every three years...[.]" In addition, although the Lease Renewal states [Bancroft] is to have possession and control, [the Baribaults] should be notified "of any required repair." Together, the inclusion of these provisions suggests some retention of control of the Subject Property by [the Baribaults]—at least enough to counter [the Baribaults] claim that the parties' intent was for [Bancroft] to adopt blanket responsibility for [the Baribaults'] own negligence.

The conduct of [the Baribaults] is consistent with reading the Lease to suggest the location of [Mr. Hailey's] injury was not under the "exclusive control" of [Bancroft], considering that [the Baribaults] accepted responsibility and control of the area upon sending Mr. Baribault to perform an inspection and potentially make repairs. Ultimately, any allegation by [the Baribaults] that the parties expressed clear intent for [Bancroft] to be responsible for the location of [Mr. Hailey's] injury is at odds with the inclusion of the plain language excluding indemnity for [the Baribaults'] own negligence—language that the Court in *Bethlehem* did not have to reconcile when analyzing the contract as a whole. Overall, this Court has carefully "given effect" to "each and every part" of the Lease, attempted to ascertain the intent of the parties, and done its best to adopt an interpretation ascribing "the most reasonable, probable, and natural conduct of the parties." *Bethlehem*, 703 A.2d at 42. That this [c]ourt followed the instruction of *Bester* and *Bethlehem* but ultimately disagreed with [the Baribaults] as to the exact intent of the parties—both with respect to "exclusive control" of the incident location and application of indemnity to [the Baribaults'] own negligence—is not an error on the part of this [c]ourt.

Trial Court Opinion, 3/2/20, at 7-13 (internal brackets omitted) (emphases in original).

After careful review, we agree with the trial court. The Lease unequivocally provides that the Baribaults are liable for their own negligence.

The Lease, 1/14/00, at ¶¶ 12-13. There is nothing in the Lease evidencing Bancroft's specific agreement to waive the immunity from joinder afforded employers under the Workers' Compensation Act and indemnify the Baribaults for Mr. Hailey's injury. The general, boilerplate language in the Lease is insufficient. *See Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 309 n.2 (Pa. Super. 1993) (applying the *Perry/Ruzzi* rule). Accordingly, the Baribaults are precluded from joining Bancroft as an additional defendant or subjecting Bancroft to liability outside of Bancroft's separate liability under the Workers' Compensation Act. *Id.* at 307. Therefore, there is no genuine issue of material fact, and Bancroft is entitled to judgment as a matter of law. *Hovis*, 64 A.3d at 1081.

Nevertheless, the Baribaults also claim that they are seeking indemnification for Bancroft's alleged negligence, and the *Perry/Ruzzi* rule should not preclude indemnification. The Baribaults' Brief at 16. In support of this contention, the Baribaults cite *Mace v. Atlantic Refining Marketing Corp.*, 785 A.2d 491 (Pa. 2001). The Baribaults' Brief at 16. We conclude that *Mace* is distinguishable.

As noted above, the *Perry/Ruzzi* rule provides that an indemnity contract against personal injuries should not be construed to indemnify against the negligence of the indemnitee unless it is specific and expressed in unequivocal terms. In *Mace*, Atlantic Refining & Marketing Corporation ("Atlantic") owned a gas station/convenience store, Bassam Barqawi

("Barqawi") was a franchisee operating the store, and Bobby Perry ("Perry") was a stock clerk at the store. **Mace**, 785 A.2d at 493-494. While working at the store one night, Perry assaulted a customer of the store, Edward Keyse Mace ("Mace"), with a baseball bat. Mace sued Atlantic, Barqawi, and Perry to recover damages for the injuries he sustained in the attack. Atlantic filed cross-claims against Barqawi for contractual indemnity and breach of contract, asserting that Barqawi had an obligation under the lease to defend Atlantic against Mace's claims. Pursuant to the lease between Atlantic and Barqawi, Atlantic filed a motion for summary judgment arguing that as a matter of law, Atlantic was not liable in any manner to Mace. The trial court concluded that Atlantic was not negligent, granted Atlantic's motion for summary judgment, and dismissed all claims and cross-claims against Atlantic. Nevertheless, Atlantic continued its cross-claims against Barqawi for defense costs and legal fees that it expended in defending itself in Mace's personal injury action. The trial court concluded that under the lease, Barqawi had no obligation to defend Atlantic in the personal injury action instituted by Mace, and based on this ruling, the trial court dismissed Atlantic's cross-claims against Barqawi. **Id.** 493-495.

On appeal, a majority of a panel of this Court affirmed based on the **Perry/Ruzzi** rule. **Mace v. Atlantic Refining & Marketing Corp.**, 717 A.2d 1050 (Pa. Super. 1998). The Supreme Court of Pennsylvania granted allowance of appeal and reversed. Our Supreme Court held:

the **Perry-Ruzzi** rule is simply not applicable to the instant case because Atlantic is not seeking to relieve itself of responsibility for its own negligence. Atlantic did not fail to perform any of its obligations under the Agreement and Lease. Instead, Atlantic was merely charged with negligence based on the actions of Perry, one of Barqawi's employees. As the Superior Court recognized, Atlantic was **"loosed of all tort responsibility in the underlying case" when the trial court granted Atlantic's motions for summary judgment**, thereby dismissing with prejudice all claims and cross-claims against Atlantic. **Since Atlantic was adjudicated a non-negligent party**, the **Perry-Ruzzi** rule is, by definition, not relevant here.

**Mace**, 785 A.2d at 495 (internal citation omitted) (emphases added).

There are key distinctions between **Mace** and the instant case. In **Mace**, the plaintiff was not an employee, and the Workers' Compensation Act was not implicated as a bar to Atlantic pursuing contribution from Barqawi. Moreover, Atlantic, the owner of the premises, was specifically adjudicated "non-negligent." **Mace**, 785 A.2d at 495.

Herein, the Baribaults are precluded from seeking contribution or indemnification from Bancroft under the Workers' Compensation Act. Moreover, the Baribaults were never adjudicated non-negligent. Therefore, the trial court correctly applied the **Perry/Ruzzi** rule. Because there was no specific language whereby Bancroft contracted to indemnify the Baribaults, there can be no indemnification. As we noted above, Bancroft's liability falls within the exclusive purview of the Workers' Compensation Act absent a specific agreement otherwise. **Bester**, 619 A.2d at 307; 77 P.S. § 481. Herein, the Haileys initiated this action against the Baribaults for the Baribaults' negligence, and it was the Baribaults that attempted to join

- 15 -

Bancroft as an additional defendant. Bancroft did not waive immunity under the Workers' Compensation Act and did not specifically agree to indemnify the Baribaults pursuant to the **Perry/Ruzzi** rule; therefore, the Baribaults are prohibited as a matter of law from seeking contribution or indemnification from Bancroft. **Bester**, 619 A.2d at 307; 77 P.S. § 481.

In the final portion of their argument, the Baribaults' contend that they were merely a "landlord out of possession and not liable for the injuries allegedly sustained by Mr. Hailey." The Baribaults' Brief at 17. After review, we fail to see how this assertion has any bearing on the trial court's ruling that Bancroft could not be joined as an additional defendant and granting summary judgment in favor of Bancroft. Moreover, the Baribaults reached a settlement with the Haileys. Trial Court Opinion, 3/2/20, at 5; Notice of Stipulation of Settlement, 12/17/19. We have already concluded that the Baribaults were not permitted to join Bancroft as an additional defendant and were not entitled to contribution or indemnification. Accordingly, we need not address whether the Baribaults were a landlord out of possession.

Assuming, *arguendo*, that we were to reach this claim, we would agree with the trial court that the Baribaults were not a landlord out of possession. Trial Court Opinion, 3/2/20, at 15. "As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." **Jones v. Levin**,

- 16 -

940 A.2d 451, 454 (Pa. Super. 2007). However, this rule is subject to exceptions:

> A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance *per se*; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

*Dorsey v. Continental Associates*, 591 A.2d 716, 718-719 (Pa. Super. 1991) (citing *Henze v. Texaco, Inc.*, 508 A.2d 1200, 1202 (Pa. Super. 1986) (internal citations omitted)).

The trial court addressed this issue as follows:

> In the instant case, [the Baribaults] cannot claim error by contending that this [c]ourt should have found that the landlord out of possession rule barred [the Baribaults] from any and all liability for negligence. The record before this [c]ourt established that [the Baribaults'] conduct could fit squarely within the purview of exceptions five and six of the landlord out of possession rule. Specifically, the evidence suggested that [the Baribaults] were put on actual notice of the condition causing [Mr. Hailey's] injury twenty (20) months prior to his fall, having received an email on October 5, 2010 from [Bancroft's] housing specialist reporting that the Subject Property needed "kitchen tile and the tile leading to the basement replaced immediately." *See* Docket Entry 94 at Ex. N. Rather than advising [Bancroft] that the location in need of repair was under the "exclusive control" and the sole "responsibility" of [Bancroft]—[which] would have been consistent with the position [the Baribaults] take now—[the] Baribault[s]

accepted the location of the proposed repair as falling under the control and responsibility of [the Baribaults] and sent Mr. Baribault to the location of [Mr. Hailey's] injury to inspect and repair the tile there. *See* Docket Entry 92 at Ex. 4, pp. 175-77.

Upon inspection, Mr. Baribault concluded that the kitchen tile needed replaced but that the tile on the basement landing—**the future site of [Mr. Hailey's] injury**—did not require replacement. *See id*. at Ex. 3, pp. 24-35. At odds with his decision to not replace the basement landing tile, Mr. Baribault testified at deposition that the basement landing used "self-stick" tiles that he would not have personally chosen to install, given his opinion that such tiles were "an inferior product" that is thin and "wears out quick." *Id.* at pp. 33-36. Following [the Baribaults'] inaction in the face of having notice of a dangerous condition and having undertaken responsibility for it, [Mr. Hailey] was injured on the same basement landing Mr. Baribault previously deemed safe. [Mr. Hailey] summarized the incident as follows: "the floor tiles moved, and I tripped and fell down the steps." *Id.* at Ex. 2, pp. 75-76. Consistent with [the Baribaults] having accepted the location of [Mr. Hailey's] injury as under their control and responsibility, [the Baribaults] replaced the stair system leading to the basement two weeks after [Mr. Hailey's] fall. *See id*. at Ex. 3, pp. 20-21.

Therefore—by their own testimony—[the Baribaults] could be found to owe a duty to [the Haileys] despite [the Baribault's] status as landlords out of possession, having "undertaken to repair the demised premises and negligently making the repairs" or having "'failed to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises." *Henze v. Texaco, Inc*., 508 A.2d at 1202. As such, this [c]ourt did not err in declining to accept [the Baribaults'] position that their status as landlords out of possession barred any claim of negligence against them.

\* \* \*

To the extent that [the Baribaults] argue that this [c]ourt should have found [Mr. Hailey's] injury was caused in whole or in part by the negligence of [Bancroft], this [c]ourt found that even when viewing the record "in the light most favorable to the non-moving party" and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, [Bancroft]

met its burden of establishing the absence of any genuine issues of material fact. *See Payne*[ *v. Commonwealth Dept. of Corrections*,] 871 A.2d [795,] 800 [(Pa. 2005)]; Pa. R.C.P. 1035.2. Although [the Baribaults] extensively quoted the depositions of former and current employees of [Bancroft], [the Baribaults] ultimately failed to adduce sufficient evidence to establish that [Bancroft] had notice of any alleged defect or dangerous condition at the basement landing where [Mr. Hailey's] injury occurred. To the contrary, there is clear evidence that [the Baribaults] had specific awareness of a defect or condition at the location of [Mr. Hailey's] injury, as seen by the email asking [the Baribaults] to replace tile at the injury location and Mr. Baribault's testimony that he declined to do so, despite being of the opinion that the tile used an "inferior product" that would wear out shortly. Despite having specific knowledge of the potential dangerous condition of the tile upon close inspection, [the Baribaults] did not alert [Bancroft] or otherwise indicate such condition was [Bancroft's] responsibility for repair.

Although past and present employees of [Bancroft] testified to their inspection duties and a procedure by which potential defects or conditions were to be reported, none could provide specific evidence establishing [Bancroft] knew, or could have known, of the existence of a dangerous defect or condition in the location of [Mr. Hailey's] injury. Even if these employees did establish [Bancroft] had notice of a dangerous defect or condition, this [c]ourt notes again that in this case, [Mr. Hailey] only alleged negligence on the part of [the Baribaults], and [Bancroft] expressly excluded [the Baribaults'] own negligence from its duty to indemnify. "[A] defendant whose negligence is alleged to be responsible for an injury suffered by an employee protected by the Work[ers'] Compensation Act, may not, in the suit brought against him, join the employer as an additional defendant." *Heckendorn*, 439 A.2d at 675. Thus, with the only evidence of notice of a potential defect or condition at the location of [Mr. Hailey's] injury being that which established [the Baribaults] had notice, this Court did not err in granting [Bancroft]'s Motion for Summary Judgment.

Trial Court Opinion, 3/2/20, at 13-16 (original brackets omitted) (emphasis added).

- 19 -

The record reveals that the Baribaults had actual notice of the defective condition of the flooring twenty months prior to Mr. Hailey's fall. The Hailey's Answer to the Baribaults' Motion for Summary Judgment, 5/1/18 (Exhibit 1, Email to Ms. Baribault, 10/5/10). Mr. Baribault stated that he inspected the condition of the flooring and made repairs to certain areas and even commented on the inferior quality of the tiles on the landing where Mr. Hailey fell. *Id.* at Exhibit 3 (Mr. Baribaults' Deposition, N.T., 7/19/17, at 30-40); Exhibit 4 (Mr. Baribaults' Deposition, N.T., 7/19/17, at 175).

If we were to reach this issue, we would conclude that the Baribaults' conduct reflected that they retained control over the Subject Property and repairs thereto, they had actual notice of the need for repairs, and they failed to make the required repairs before Mr. Hailey was injured. For these reasons, we would agree with the trial court that the Baribaults were not a landlord out of possession. Trial Court Opinion, 3/2/20, at 15; *Dorsey*, 591 A.2d 716, 718-719.

For the reasons set forth above, we conclude that the trial court committed no error of law or abuse of discretion in its June 4, 2018 order granting Bancroft's motion for summary judgment and denying the Baribaults' motion for summary judgment. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/20